ART METAL CONSTRUCTION COMPANY *vs.* EDWARD C. KNIGHT, JR.

MAY 11, 1936.

PRESENT: Flynn, C. J., Moss, and Capotosto, JJ.

230

CAPOTOSTO, J. This is a petition, under general laws 1923, chapter 301, for the enforcement of a lien on the real estate of the respondent, Edward C. Knight, Jr., in the town of Middletown, for finished materials and labor furnished by the petitioner, a Massachusetts corporation, and used in the construction of an addition to a building. The addition was being constructed on that real estate by Milton W. Young, of Philadelphia, Pennsylvania, as general contractor, under an oral contract with the respondent. The materials and labor for which a lien is sought were furnished under and in accordance with a sub-contract in writing, between the petitioner and the general contractor, for the furnishing and installation of five monel metal doors and screens for the sum of $11,500, of which $6,000 was paid by the original contractor. The lien is claimed for the balance of $5,500 overdue and unpaid.

The petitioner, on February 21, 1933, gave the respondent Knight written notice of its intention to claim a lien, and on February 23, 1933, left a copy of this notice, for record, with the town clerk of Middletown. This notice stated that within sixty days the petitioner had placed certain building materials on the respondent's land in Middletown, and that within forty days it had performed certain labor in installing said materials in the building that was being erected thereon. This notice referred generally to general laws 1923, chap. 301, "Of Liens," and *made no reference to any particular section of said chapter.*

On April 26, 1933, the petitioner lodged in the office of the town clerk of Middletown its account or demand for the purpose of commencing legal process to enforce its claim of lien and stated therein that the lien was "created by virtue of the provisions of sections 5 and 6 of chapter 301 of the General Laws of the State of Rhode Island, 1923." It ended as follows:

> "Newport, R. I.
> April 21, 1933.
>
> "Account
>
> "Art Metal Construction Company, Account with Milton W. Young for materials and labor furnished for the Edward C. Knight, Jr., house, on Indian Avenue, Middletown, R. I.
>
> "To contract to furnish and install five monel metal sliding doors and screens for the addition to the residence of Edward C. Knight, Jr., Middletown, R. I. $11,500
>
> "Received on account 6,000
> _____
> "Balance due 5,500"

On May 13, 1933, the petitioner filed in the superior court the present petition to enforce its lien against the respondent Knight, alleging that the lien was claimed under a subcontract in writing with Milton W. Young, the general

contractor, and "that within four (4) months after said sum of Fifty-Five Hundred ($5,500.00) Dollars became due and payable, to wit, the 26th day of April, A. D., 1933, the petitioner commenced legal process to enforce its lien by giving and recording the notice prescribed by the statute." The respondent Knight duly entered his appearance by counsel and filed an answer; and on his motion E. D. Hackman, trustee in bankruptcy for Milton W. Young, was added as a party respondent, and entered his appearance. In December 1933, at the request of the petitioner, the testimony of certain witnesses was taken by deposition in Philadelphia.

Subsequently thereto each respondent separately moved to dismiss the petition because (1) the petitioner's account claims a lien for materials by virtue of sec. 5 of chap. 301 and no such lien is given by said section; (2) the petition does not set forth that any, or, if any, what labor was furnished or done by the petitioner within forty days next preceding service upon the respondent Knight of the petitioner's notice of intention to claim a lien; (3) it does not state that petitioner's notice of intention to claim a lien was given to the respondent Knight and a copy thereof placed on record within sixty days after any materials were placed upon the land of said respondent; (4) it does not set forth the particulars of petitioner's account or demand; (5) it does not set forth the terms of the sub-contract; (6) it does not set forth a copy of the sub-contract; (7) it does not set forth when the payments became due and payable under the sub-contract.

Upon a hearing of the foregoing motions to dismiss, the superior court, on May 14, 1934, decided against the respondents as to grounds 2 and 3 and in their favor as to grounds 1, 4, 5, 6, and 7, with permission to the petitioner to file an amended petition as to grounds 4, 5, 6, and 7, "setting forth therein the particulars of the petitioner's account or demand stating separately therein the amounts of charges for labor, an exact copy of the sub-contract in

writing made by the petitioner with Milton W. Young, an itemized statement showing the amounts of the various payments received by the petitioner under said contract and the dates when the same were respectively received, and a statement of when payments became due and payable under said contract and of the respective amounts thereof."

Before a decree was entered in accordance with this decision, the petitioner filed a motion to amend its account by striking therefrom all references to secs. 5 and 6 of chap. 301. This motion stated that the petitioner claimed a lien under sec. 4 of that chapter; that the reference to secs. 5 and 6 in the account was made through the inadvertence of counsel who prepared the account; that its sub-contract in writing with Milton W. Young is an entire and indivisible contract and not a claim for items of labor and for items of material that can be segregated, but is a claim for a balance due on a contract; and that an error in the pleadings should not defeat the petitioner's right to enforce a lien granted to it by section 1 of chapter 301, G. L. 1923, for a just and meritorious claim.

The superior court denied this motion on July 12, 1934, and entered a decree to that effect. The same day it entered another decree in conformity with its decision of May 14, 1934. From these two decrees the petitioner has claimed an appeal to this court on the grounds that the superior court erred when it dismissed the petition in so far as it claims a lien for materials, when it refused to allow the petitioner to strike out from its account the reference to secs. 5 and 6 of chap. 301, and when it ordered the petitioner to set forth separately the amounts of its charges for labor in the finished product as distinguished from its charges for materials.

The substance of the court's decision on the respondents' objections to the account was that section 1 of chap. 301, rather than sec. 5, created the lien for materials; that the allegation in the account that the petitioner claimed a lien under sec. 5 was fatally erroneous and could not be amended;

and that therefore the claim so far as it related to a lien for materials should be dismissed. It further held that, as the sub-contract was in writing, the petitioner could enforce a lien for labor in accordance with sec. 4, provided that it amended its petition by setting forth therein the particulars of its account or demand and the separate amount of charges for labor.

The questions presented by this appeal are not without difficulty. The mechanics' lien law, which is of ancient origin in this state, has been the subject of substantial but uncoordinated amendments on several occasions. It is not surprising that the language in some of the decisions of this court, which had to deal with specific situations in connection with the statute as it developed, may now be open to further consideration. We are aware that there is and for many years has been great uncertainty, among the members of the legal profession in this state, as to the interpretation and application of the statute. This uncertainty is traceable, in part at least, to the reasoning and to *dicta* in some of our cases. It is therefore our purpose in this opinion to construe those sections of the mechanics' lien statute that are pertinent to or reasonably connected with the issues at bar, in the light of their history and the previous decisions of this court, and in such a way as to make them if possible, consistent and comprehensive. Whenever the language used in any section is susceptible of more than one reasonable interpretation, we shall adopt the reasonable interpretation which in our judgment will best carry out the evident purposes of the statute as a whole.

A mechanic's lien, such as we have in this case, is purely a creature of chap. 301, general laws 1923, and comes into existence when the work begins or the materials are furnished. In *Briggs* v. *Titus*, 13 R. I. 136, speaking of the nature of a lien, at page 138, the court says: "It is not acquired by an adverse proceeding after the debt has been incurred, but it accrues as the debt accrues, being incident to the improvement, and therefore the owner of the estate

to which it attaches consents to it when he consents to the improvement."

The decision of the instant case depends upon a determination of the questions under what section or sections of chap. 301, G. L. 1923, the petitioner acquired a right to a lien, by which sections the procedure for enforcing such right is prescribed, and whether the petitioner, in proceeding to enforce such right, has complied with all the requirements prescribed by the statute for the enforcement of its particular type or types of lien that are mandatory or jurisdictional in character.

The sections of the lien statute which are particularly important in this case are 1, 4, 5, and 6. Although secs. 2 and 3 are not involved here, it may be well to state that they are, in substance, sub-divisions of section 1 and should be similarly interpreted and applied when pertinent. Section 1 creates a right of lien against an owner of the freehold upon which a building or other improvement is constructed or repaired; sec. 2 creates such a right against a tenant or lessee, and sec. 3 creates that right against a person who owns less than a freehold in the land. But in considering all these sections we must keep in mind also sec. 7, because secs. 4, 5 and 6 provide that legal process to enforce the types of liens to which they respectively apply must be commenced within certain periods stated in these sections respectively; and sec. 7 defines the commencement of legal process to enforce any lien. In substance, it defines it as the lodging by the lien claimant, in the proper office for record, of his account or demand for which the lien is claimed, with a "notice to what building . . . and land and, to whose or what estate in the same the said account or demand refers."

In the discussion that follows, it is impractical to quote in all instances the various sections of the statute to which we may refer. It is, therefore, important to remember that sections 1, 2, 3 and 5 were amended in 1888, that sec. 4 has continued in the same form as it was in when the lien

statute was first enacted in 1847, and that sec. 6 was not amended until 1906. Before its amendment, section 1 provided that whenever a building was constructed or repaired on any land, *by contract with or at the request of the owner of such building and land,* a lien was given "for all the *work* done in the construction . . . or reparation of such building," without defining the *person to whom* a lien was given, but as to *materials* a lien was given only for the materials used in such construction or reparation, "which have been furnished by any person *who had contracted or been requested as aforesaid to construct or repair the same."* (italics ours) The earliest reported case dealing with this section is *Sweet & Carpenter* v. *James,* 2 R. I. 270, (1852), where the court held that the original contractor was entitled to a lien not only for his personal labor but for the labor of all employed by him in the construction or improvement. The provisions of the section in respect to materials were in issue in *Hatch* v. *Faucher,* 15 R. I. 459, (1887), where the court denied a sub-contractor a lien for materials, and, at page 460, says: "The only lien given by cap. 177 for materials used in a building, erected for a person who is the owner of the land on which it is erected, is given by the first section, and *is given only to a person who has contracted with or been requested by such owner* to erect the building. In other words, the lien, in such a case, is given only for materials furnished by the *original contractor,* not for materials furnished by a sub-contractor in pursuance of his contract with, or at the request of, the original contractor." (italics ours)

When these cases were decided, sec. 4, which has never been amended, provided that if any building was constructed "under a written contract, then the lien created by this chapter in favor of such contractor" was wholly lost unless legal process for enforcing the same, as prescribed, was commenced within four months from the time that any payment on such contract became due and payable, if it was not then made. Section 5 then read as follows: "No

person who shall do work for and furnish materials to be used in the construction . . . of any building . . . without written contract, shall have any advantage of any lien therefor created by this chapter, unless he shall commence legal process for enforcing the same, in the manner hereinafter provided, within six months from the time of the commencing the doing of such work or of the commencing the delivery of the materials, if payment for the same shall not then be made." The true relation of these two sections to each other and of both to section 1 has been the subject of some doubt. From our examination of them in the light of the interpretation given to section 1 by the decided cases before 1888, it is our opinion that both secs. 4 and 5 dealt only with the lien of an original contractor, depending for their application on whether the original contractor claimed the lien "under a written contract," or "without written contract." A substantial objection, therefore, to the statute before its amendment was that no lien was given for materials except to the original contractor.

Let us now turn to a consideration of the lien for work and labor before some sections of the statute were amended in 1888. It was settled by the case of *Sweet & Carpenter* v. *James, supra,* that the original contractor had a lien for the labor of himself and of his employees. This case further suggested that the employees of such a contractor also had a lien for their labor in their own right. Who, besides these persons, was entitled to a lien for work and labor must be determined from the then language of sec. 6 as interpreted by the decisions of this court. The first part of that section, until it was amended in 1906, read as follows: "No person who shall do work or labor in the construction . . . of any building . . . at the request of any person who had entered into a contract, whether in writing or not, for such construction . . shall have any lien therefor, unless such person shall, within thirty days after commencing the work give notice in writing." The case of *Kenyon* v. *Peckham,* 10 R. I. 402,

(1873), followed the suggestion in *Sweet & Carpenter* v. *James, supra,* and sustained a lien for labor to the workman of the original contractor, such workman having given the notice to the owner of the land as required by sec. 6. In *Hatch* v. *Faucher, supra,* it was held that one who did work for the original contractor was entitled to a lien for the labor of himself and his employees. In reaching this sound conclusion, the court employed language in reference to sec. 6, which has since been open to misunderstanding, where, at page 461 of that opinion, it says: "A lien is not directly given by this section, but is given by implication since by saying that no person of the class described shall have a lien unless he proceeds in the manner prescribed, the section implies that any person who proceeds in that manner shall have a lien." As far as we know, this is the only case which holds that a lien for work and labor was given by sec. 6 at that time. The decision in the later case of *Morrison* v. *Whaley,* 16 R. I. 715, (1890), where a lien for labor was denied to a workman for a sub-contractor, is put upon a different and, in our judgment, a much better ground. The reasoning of the court in that case is that the lien for labor is given by the first three sections, but as it is not expressly stated therein to whom such a lien is given, the legislative intent as to that matter in those first three sections is to be determined by the liens for labor that are regulated in the procedural secs. 4, 5, and 6. In the *Morrison* case, the court denied the petition on the ground that the phrase in sec. 6 "at the request of any person who had entered into a contract . . . for such construction" simply meant that the work must have been done by the lien claimant at the request of the person who had the *original contract.* It also said that the word "contract" meant only the original contract in all the preceding sections, referring to the statute as it was before the amendments of 1888.

We have referred briefly to these decisions to show that, because of the restricted and restricting language of sec. 6,

the court, which was meeting with progressive difficulties in determining to whom a lien for work was given by the statute, was finally obliged to hold that no liens for work were given to those who did work for, or furnished labor to, sub-contractors. This was another substantial objection to the statute as it stood before it was amended.

We now come to the amendments of 1888, which were directed to remedying the first objection to the statute pointed out by us, namely, its failure to give a lien for materials to sub-contractors or materialmen. By chap. 696, P. L. 1888, all language which formerly restricted such a lien to the original contractor was eliminated from section 1, so that thereafter that section gave a lien for materials used in the construction, etc., "which have been furnished by *any person*," who might be the original contractor as before, or a sub-contractor or materialman of any degree of removal from the original contractor. A similar change was made in secs. 2 and 3. No change whatever was made as to liens for work. If the procedure for enforcing the additional rights created by the amendment to secs. 1, 2 and 3 had been provided for in a separate section, a good deal of the misunderstanding that followed would have been avoided. Instead of doing this, the legislature reenacted sec. 5 as it then stood, with the exception of changing "and" to "or" in the first phrase of that section, and tacked on a proviso at the end of the section for the purpose of further regulating the additional rights that it had created. Even at the risk of partial repetition, we deem it advisable to quote all of sec. 5 as amended and as it now stands. The italics are used by us to indicate the "and" that was changed to "or," and the proviso that was added by way of amendment at the end of the original section. "Sec. 5. No person who shall do work *or* furnish materials to be used in the construction . . . of any building . . . without written contract, shall have any advantage of any lien therefor created by this chapter, unless he shall commence legal process for enforcing the same, in the manner hereinafter provided,

within six months from the time of the commencing the doing of such work or of the commencing the delivery of materials, if payment for the same shall not then be made; *and provided further, that no lien shall attach for materials furnished unless the person furnishing the same shall within sixty days after such materials are placed upon the land give notice in writing to the owner of the property to be affected by the lien (if such owner be not the purchaser of the materials) that he intends to claim such lien, and shall within the aforesaid sixty days place a copy of said notice on record in the office of the town clerk of the town in which said land is situated."*

As labor liens by others than original contractors had been, and have continued to the present time to be, regulated by sec. 6 as to the commencement of legal process to enforce them, and as the changes in the first three sections only added new liens for *materials*, we conclude that such labor liens are not regulated by sec. 5.

The reason for adding the proviso to sec. 5 is obvious. Before the changes were made in 1888 there was no good reason why an owner should have any notice from an original contractor of a lien for work and materials, since, to be covered by such lien, they must be done and furnished in accordance with a contract or request by the owner himself. But if an owner was thereafter to be liable to be burdened with liens for materials furnished by others than the original contractor, he ought to have the protection of notice of such liens, just as he had such protection under sec. 6, as to liens for *work* done or furnished by others than the original contractor. So the above proviso was added to give him such new protection. Because such a proviso was not added to sec. 4 and because the word "contract" in the statute had always been construed as meaning only a contract *with the owner*, we conclude that it continued to have that meaning in secs. 4 and 5, and that all the new liens provided for by the amendments of 1888 were intended to be and are regulated by sec. 5, both as to commencing legal process in compliance with sec. 7 and as to giving notice, and whether or not the petitioners' sub-contracts are in writing.

This interpretation of the statute as amended is entirely in harmony with three cases which came before this court soon after the amendments. *Gurney* v. *Walsham*, 16 R. I. 698; *Newell* v. *The Campbell Machine Co.*, 17 R. I. 74; *Tingley* v. *White*, 17 R. I. 533. In these it was held, among other holdings, that a notice, given and recorded by a sub-contractor or materialman, of intention to claim a lien for materials furnished for, and used in, an improvement, would cover all, and cover only, such materials furnished by him within sixty days before the giving and recording of such notice.

The case of *Murphy* v. *Guisti*, 22 R. I. 588, (1901), supports our conclusion that sec. 5 as amended regulates the lien for materials by a sub-contractor, even though his sub-contract is in writing.

In that case a lien was claimed by a sub-contractor for materials and labor under an entire sub-contract for a lump sum. As the reported opinion does not specify whether the sub-contract was oral or in writing, we examined the original papers in the files of this court and discovered that the petition in the case, filed October 29, 1900, alleges that "said work and labor were performed and said materials were furnished under a *written* contract with said Charles Warner *(the original contractor)* bearing date July 9, 1900, a copy of which is herewith filed marked Exhibit B and made a part hereof." (italics ours) The testimony of the petitioner, given before the then appellate division of the supreme court on February 20, 1901, supports this allegation in the petition and clearly establishes that his claim was based on a written sub-contract. With these facts before it, the court, after discussing in its opinion the pertinent provisions of the statute, both before and after the amendments, held that the petitioner was not entitled to a lien for labor, because the petition did not allege that he gave the notice required by sec. 6 to be given by a sub-contractor within thirty days, the then requirement, from the commencement of his work; but that, as it did allege

"that he gave the notice required by *section 5* within sixty days" and commenced legal process within six months, it showed a case for materials furnished. While we are in complete accord with the conclusion reached in that case, we believe that the court used incautious language, which has since caused some doubt among the members of the bar as to the application of the statute, when it said in its opinion that sec. 5 before 1888 "*gave* a lien for work done and materials furnished"; that sec. 6 "*gave* a lien for work done by a sub-contractor," and that after the amendment to sec. 5 "two classes of liens were introduced into the section." (italics ours) The liens were in fact given by section 1, subject to their being defeated by non-compliance with the procedure described in secs. 5 and 6. When the court said that by the amendment two classes of liens were introduced into sec. 5, we construe this language to mean that after the amendment of 1888 sec. 5 prescribed the procedure for *enforcing* two types of liens instead of one.

We are aware that in *Cook, Borden & Co.* v. *R. Z. L. Realty Corp.*, 50 R. I. 375, at page 382, and in *Anastos* v. *Brown*, 52 R. I. 462, at page 464, there is some slight language which, at first sight, might give the impression that, where the petitioner was not an original contractor, the question whether his lien for materials was governed by sec. 4 or sec. 5 depended upon whether his own sub-contract with the original contractor was in writing or not. A careful reading of these cases shows that they stand for no such proposition. In the *Cook, Borden & Co.* case, sec. 4 was not even mentioned in the opinion, and in the *Anastos* case the reference to that section was simply to illustrate the varying legislative intent in defining the procedure for the enforcement of the different types of liens. As in each of these cases, the court found that the petitioner's contract was not in writing, the question of law whether the petitioner's lien would have been governed by sec. 4, if it had been in writing, did not arise and was not decided. Therefore, in construing secs. 4 and 5, as we do, we do not overrule either of these cases.

We have already called attention to the fact that before any amendments were made to the statute it did not give liens for materials to sub-contractors and it did not cover liens for work done for or furnished to sub-contractors. As we have seen, the first of these omissions was remedied by the amendments of 1888; the second continued to remain until sec. 6 was changed in no uncertain manner by chap. 1325, P. L. 1906, which made sure that in the future those doing work for or furnishing labor to sub-contractors should have a lien. Whereas sec. 6 before its amendment was cast in negative and restricted language, the present sec. 6, chap. 301, G. L. 1923, is an affirmative enactment, complete in itself, prescribing not only procedural requirements but expressly granting the right of lien in such cases. Further discussion of this section as it now stands is unnecessary.

To summarize, our conclusions as to the interpretation and effect of sections 1 to 6 inclusive of the statute, as it now stands, are as follows: (1) That all the liens that are created thereby may properly be said to be created by sections 1, 2, and 3, though the liens for labor done or furnished otherwise than under contract with or at the request of the owner are specifically created by sec. 6. (2) That if a petitioner's lien is based on work done or furnished or materials furnished, or both, *under a written contract between the petitioner and the owner,* the only one of secs. 4, 5 and 6 which applies to it is sec. 4; and if the lien is not of that character, sec. 4 has no application to it. (3) That if the petitioner's lien is for materials furnished otherwise than under a written contract between him and the owner, such lien is governed by sec. 5; legal process to enforce it must be commenced within six months from the time of the commencement of the delivery of such materials; and, if the owner is not the purchaser of such materials, a lien can be established only for materials placed upon the land within sixty days before notice is given to the owner as provided in that section, legal process to enforce the

same being commenced within the six months period above mentioned.  (4) That, if the petitioner's lien is for work done by him directly for, or furnished by him directly to, the owner, otherwise than under a written contract between them, such lien is governed by sec. 5 only, of these sections; legal process to enforce it must be commenced within six months from the time of the commencement of such work; and no notice need be given to the owner.  (5) That if the petitioner's lien is for work done or furnished by him at the request of the original contractor or any sub-contractor, it is governed by sec. 6 only, of the sections now under consideration.

In the instant case, the record shows that the petitioner's claim to a lien is based on a separable sub-contract in writing for a lump sum, for finished materials, and labor of installation.    Under the construction which we have above given to the statute, the petitioner, to sustain its lien must show that it has satisfied the requirements of sec. 5 as to the finished materials and sec. 6 as to the labor of installation. The lien was given it by section 1, at least as to such materials; and as to such labor by sec. 6 and, we believe, by section 1 also.    It must also show that it has complied with the requirements of sec. 7, and must comply with the requirements of sec. 9, if it has not already done so.

The respondents' main contention is that, since the petitioner's account or demand, as filed with the town clerk of Middletown as a part of its commencement of legal process under sec. 7, claimed a lien "created by virtue of the provisions of sections 5 and 6 of chapter 301," the petitioner has thereby precluded itself from enforcing its lien, as to materials.

The respondents rely mainly upon the case of *Glynn* v. *Zabriskie*, 19 R. I. 215, hereinafter referred to as the *Glynn* case.    In that case the notice of intention to claim a lien, served on the respondent, stated that the lien intended to be claimed was "created by Pub. Stat. cap. 177, § 5, as amended by Public Laws, cap. 696, of March 21, 1888.'

In dismissing the petition, all that the court says in its opinion is: "The lien for materials furnished is given, not by §5, referred to in the notice, but by §1 of cap. 177 of the Public Statutes as amended by Pub. Laws, cap. 696, §1. Section 5 merely limits the period for the commencement of legal process to enforce the lien created by §1, as amended, and for the notice to be given to the owner of the property of an intention to claim the lien. The statute being in derogation of the common law, a strict compliance with its requirements is necessary. *Dodge* v. *Walsham*, 16 R. I. 704." The citation, as used, is confusing, for unless one knows that the case cited deals with an entirely different point in the lien law, it may be interpreted as being an authority upon the issue then before the court. As a matter of fact, the case was undoubtedly cited for the statement at the very end of that opinion, which says: "It is for the petitioners, who are claiming under the statute in derogation of the common law, to show that they have complied with all requirements of the statute." We agree with this general statement, but with the observation that, in determining whether there is a sufficient compliance with the statute, the inquiry should be directed and restricted to the real requirements prescribed by the legislature to effect the purpose of the act.

The *Glynn* case might, perhaps, be dismissed from further consideration by pointing out that in that case the question at issue was the sufficiency of the notice of intention to claim a lien, while we are concerned with the sufficiency of the account or demand, which matters are controlled by different sections of the statute. But we prefer to state frankly that we consider the decision in the *Glynn* case as a harsh construction of the mechanic's lien statute, which was designed to prevent unjust enrichment of one person at the expense of another.

The tendency of the more recent decisions is to give effect to the purpose of the mechanic's lien law without restricting its scope by doing violence to its language. In *Field &*

*Slocumb* v. *Consolidated Mineral Water Co.*, 25 R. I. 319, at 320, this court, after stating a strict construction by the highest court of Massachusetts of the corresponding statute of that state, says: "We think this construction stricter than the spirit of our statute requires. The statute is intended to afford a liberal remedy to all who have contributed labor or material towards adding to the value of the property to which the lien attaches."

There is nothing inherently ·sacred in what an account shall state, provided that it complies with the mandatory provisions of the section that controls it. We agree with that line of cases which holds that *omissions* of prescribed requirements in either the notice to claim a lien or in the account cannot be cured by amendment. Observance of the statute in this respect has been held "jurisdictional," meaning thereby that those requirements must be satisfied or else the lien cannot be enforced. In *Bouchard* v. *Guisti*, 22 R. I. 591, the notice was held defective in not stating for what building the materials were furnished, and in *McElroy* v. *Keily*, 27 R. I. 64, and *McDuff Coal & Lumber Co.* v. *Monaco*, 32 R. I. 323, a joint notice and a joint account, covering two separate houses in the former case and three such houses in the latter case, were held insufficient in that the statute called for a separate notice and account for each house. In *Harris* v. *Page*, 23 R. I. 440, the court denied a motion for leave to amend an account by *adding* thereto items not appearing in the original statement. This court· in *Hawkins* v. *Boyden*, 25 R. I. 181, said that an omission as to what land and buildings and what or whose estate the demand refers to, in the notice claiming a lien, is substantial and cannot be supplied by amendment. It would not operate as a notice if it could be extended by amendment. *Bouchard* v. *Guisti, supra.*

It does not follow, however, that, if the lien notice incorporates *more* than the claimant can ultimately prove because of noncompliance with some requirement of the statute, such excess so vitiates the proceeding as to render

it void. *Murphy* v. *Guisti*, 22 R. I. 588. Under such circumstances he is entitled to recover what he can actually prove. Nor is an account, once filed, beyond amendment. In *Cook, Borden & Co.* v. *R. Z. L. Realty Corp.*, 50 R. I. 375, which allowed the correction of two delivery dates in the account as filed, the court, at page 378, says: "A correction in a delivery date is not extending or adding to the account. When the date as corrected still leaves delivery within the required period, there is no substantial alteration of the account. . . . The erroneous date in the account which was filed as commencement of legal process pursuant to Section 7 was surplusage." The sum and substance of these cases is that, after the expiration of the time set for filing by the statute, the notice of lien and the account cannot be amended to correct the omission of prescribed requirements or to extend the claim, but that either of them may be amended to rectify erroneous references or statements therein which are not required by the statute, provided that the amendment does not enlarge the account or demand as originally filed.

In *Hawkins* v. *Boyden, supra*, where a number of lien petitions by different claimants were considered at the same time, the court discusses one of those claims, at page 185, and says: "In the *Wilmarth* and *MacKillop* case the motion to dismiss is based upon the claim that, Boyden being declared in the petition to be a lessee, the lien is given by section 2 of the act and the petition claims a lien generally under chapter 206 without specifying the section. There is no substantial defect in this regard. The petition cites the lease, and from that fact the lien to be decreed must be under the section which gives the lien; but the lien is not lost because the section is not referred to. *A lien is only lost, by the terms of the statute, when the prescribed steps are not taken, and no one of those steps requires a reference to sections of the act.*" We agree with the statement that we have italicized. If a lien claimant satisfies the requirements of the statute pertaining to the kind of lien that he is entitled

to, then he is not to be deprived of the value of his labor or materials merely because, through some error, he may have misstated or misquoted something that is not required by the statute as a condition to the enforcement of a right intended primarily for his protection. What the statute neither requires nor contemplates may be regarded as surplusage.

We are of the opinion that the reference which the petitioner made, in its account or demand as filed, to secs. 5 and 6 of chapter 301, as the source of its lien, did not affect or impair its right to enforce its lien, if it otherwise complied with the requirements of the statute, since the reference to sec. 6 was not entirely erroneous and that to sec. 5 was unnecessary and could not have misled either one of the respondents or any of the public.

The second of the decrees appealed from requires that the petitioner split its claim under its contract so as to set forth separately in its petition the items of its charges for labor as distinguished from its charges for materials, and that it add to its petition many particulars as to its contract and its account with the original contractor. This former matter, arising under sec. 9, and that of the requirements of sec. 7 should be somewhat discussed by us.

In *Goff* v. *Hosmer*, 20 R. I. 91, where a lien for materials was involved, the court calls attention to the requirements of sec. 7, as to the commencement of legal process to enforce a lien, and at page 94, says: "The word 'demand' is used in the statute with the word 'account,' but we think that this is intended to cover cases which may not be the subject of an account, or where a particular account cannot be given and that it is not intended to substitute a general statement in place of an account in other cases."

In *Murphy* v. *Guisti, supra*, where the sufficiency of an account filed with the petition for a lien under an entire contract was under consideration, the court says, at page 590; " 'The commencement of process' consists in filing 'the account or demand.' In this case there was no

account of items, but there was notice of a 'demand' claiming a certain amount to be due for furnishing 'materials. and labor for plumbing and gas-fitting.' Evidently 'the account or demand' required by section 7 is not so full an account in details as that required by section 9, because the latter says 'setting forth the *particulars* of his account or demand.' The notice is to inform both the owner and the public of the nature and extent of the account or demand for which the lien is sought, and it must be exact enough for that, but in the petition the particulars must be stated, as in actions on book-account."

The same case came before this court again and is reported in 26 R. I. 306. In that opinion the court states that it has already decided that the petition is amendable so as to show a lien only for materials furnished, "which, being under a general contract, were not the subject of an account, *i. e.*, a separate book account, but they would have to be proved according to their value, and the claim as made for the full contract price could not injure an owner or purchaser, if the lien could attach only for a smaller sum. The petitioner, therefore, has leave to amend his petition for the amount of materials furnished."

The reasoning upon which the conclusions of this court were based in the two cases just discussed seems to us entirely sound We, therefore, apply such reasoning and conclusions to the instant case. So far as we can see, the petition, with its attached exhibits, sufficiently alleges compliance by the petitioner with the requirements of secs. 5, 6, and 7 of the lien statute, except that it does not allege that the account or demand was filed within the period prescribed by sec. 5. The petition is amendable, and it should be amended so as to show that the account or demand was so filed, if such be the fact, and so as to set forth with reasonable particularity the substance of the contract between the petitioner and the original contractor, showing when and what payments became due according to its terms; the dates and amounts of the payments received

by the petitioner thereunder; the value of the finished monel metal doors and screens furnished, as definitely as is reasonably practical; and the value of the labor involved in their installation. The lien cannot be established for more than the total sum remaining unpaid of the contract price, plus interest on all unpaid portions of such price from the dates when they respectively became payable.

The respondents contend that, irrespective of the merits of the petitioner's claim, its appeal to this court at the present time is not an appeal from a final decree, and, therefore, should be dismissed as prematurely brought. General Laws 1923, chapter 339, sec. 25, provides that in an equity case an appeal may be taken only from a "final decree of the superior court," except, as provided in sec. 34 of said chapter, in the case of an interlocutory decree granting or continuing an injunction, appointing a receiver or ordering a sale of real or personal property. The respondents claim that the petitioner in this case is outside the statute and quote from *McAuslan* v. *McAuslan*, 34 R. I. 462, and *Acme Finishing Co.* v. *Greenville Finishing Co. Inc.*, 43 R. I. 294, in support of their contention.

The only language from these cases that the respondents bring to our attention is that which deals with the general rule in regard to appeals from interlocutory decrees in the ordinary equity case. They overlook an important exception, pertinent to the case at bar, which the court therein fully discusses and approves. In *McAuslan* v. *McAuslan*, *supra*, after holding that the general intent of the statute is to allow an appeal only after all matters arising in the cause in the superior court have been determined, the court, at page 470, says: "The strict observance of this general rule would in some instances result in such possible hardship and injury that appellate courts in such case have taken cognizance of appeals from decrees, which were technically interlocutory in their character, before the merits of the cause had been determined in the court below. These cases must be considered as representing a modification of

the ordinary rule." It then proceeds to discuss the authorities on this point and, at page 472, continues: "In certain cases our statute has guarded against the possibility of injury arising from restricting appeals in all instances to final decrees, in the technical sense, by providing for appeals from interlocutory decrees granting or continuing injunctions, appointing receivers or ordering a sale of property. Besides those provided for in the statute other instances may present themselves of decrees, in a strict sense interlocutory, which by reason of their possible injurious consequences require an immediate review and must be held for this reason to have such elements of finality as to permit an immediate appeal."

In *Acme Finishing Co.* v. *Greenville Finishing Co.*, *supra*, the court, after quoting with approval the *McAuslan* case, at page 298, says: "The question whether a decree falls within the exception to the rule is one which in many cases can only be settled after consideration by the court of the facts in the particular case. . . . As this exceptional right or privilege to take an immediate appeal in order to prevent irreparable injury, rather than because of the strict finality of the decree, is allowed to the party aggrieved for his benefit and to prevent injustice, such party may elect to take his appeal forthwith or to take the appeal in the regular course."

The case at bar falls clearly within the exception to the general rule in regard to appeals from interlocutory decrees as enunciated in these cases. If the petitioner were to proceed under the decrees of the superior court as they now stand, it would be following the shadow rather than the substance of its claim, and assuming an inequitable and probably an impossible task, except as to a small part of its claim. The petitioner's appeal at the present time is justified by the facts in the instant case to prevent injustice and probable irreparable injury.

The appeal is sustained and the decrees appealed from are reversed in part. On May 18, 1936, the parties may

present for our approval a modified form of decree to be entered in the superior court in accordance with this opinion.

*Burdick, Corcoran & Peckham, Edward J. Corcoran,* for petitioner.

*Sheffield & Harvey, William P. Sheffield,* for respondent Knight.

*Greenough, Lyman & Cross, Harvey S. Reynolds,* for respondent Hackman.