DECISION
This matter first came on for hearing before Mr. Justice Lanphear on Rockland Trust Community Development Corporation II's and Rockland Trust Company's (collectively "Rockland") motion for relief from subordination, for determination of priority, and for permission to foreclose its mortgages, pursuant to the Rhode Island Mechanics' Lien Law. The Court bifurcated these issues and, in its May 1, 2009 decision, denied Rockland relief from subordination under Super. R. Civ. P. Rule 60(b). This Court will now address the final issues in Rockland's motion, namely its petition to foreclose and determination of priority, as well as the motions for priority of Jesmac, Inc., Northeast Steel Corporation Inc., and J. D. Cement Works, Inc. The Court's jurisdiction is pursuant to G.L. 1956 § 34-28-16 and § 34-28-16.1.
 I Facts and Travel
This is a complex mechanics' lien case involving a large mill renovation project along the Pawtuxet River in West Warwick, Rhode Island. The focus of the instant motion is on one of the *Page 4 
project's two properties, specifically,
186 Providence Street, Lot 10 of Assessor's Plat No. 26, known as the Cotton Shed, which is a proposed retail use project.
After an action was instituted by Northern Site Contractors, Inc. to enforce a mechanics' lien against this property, the Superior Court Clerk issued citations to various persons or entities which may have interests in the property. Similar petitions against this property were subsequently filed, and additional citations issued. Rockland, the first and third mortgage holders[1] on the Cotton Shed property, failed to timely respond to particular citations issued to it.
Rockland filed a motion seeking relief from subordination pursuant to G.L. 1956 § 34-28-16 of the Mechanics' Lien Law and R.C.P. 60(b); a determination of its priority as the first two lien holders; and permission to foreclose under § 34-28-16.1. On May 1, 2009, this Court issued a Decision denying relief from subordination in the actions brought by Northern Site Contractors, Inc. (K.M. 2008-1190), Sheridan Electric, Inc. (K.M. 2008-1248), Roofing Concepts, Inc. (K.M. 2008-1445), and Rustic Fire Prevention, Inc. ("Rustic," K.M. 2008-1396), to which Rockland did not timely answer. Consequently, Rockland's mortgages were subordinated to the liens of Northern Site, Sheridan, Roofing Concepts, and Rustic.
Thereafter, the three remaining lienors on the Cotton Shed property, specifically, Jesmac, Inc. (K.M. 2008-1696), Northeast Steel Corporation Inc. (K.M. 2008-1574), and J. D. Cement Works, Inc. ("J.D. Cement," KM-2008-1718) filed motions for priority over Rockland. Although Rockland timely answered their petitions, the remaining lienors argue that Rockland was subordinated as to all lienors pursuant to § 34-28-16. This Court heard argument on these motions on May 18, 2009.
This Court also heard argument on Rockland's motion for permission to foreclose. Rockland argues that it should be permitted to foreclose because it is "entitled to priority" over at *Page 5 
least some liens, even if it's interest is subject to other liens. Sec. 34-28-16.1. In their objections, Defendant SBER Royal Mills Cotton Shed, LLC and the mechanics' lienors assert that the statute requires priority over all liens, which Rockland lacks per this Court's ruling of May 1, 2009. After carefully considering the parties' written submissions and arguments on the instant motions, this Court is ready to address these remaining issues.
 II Analysis A Motions for Priority
The first issue before the Court is the priority of Jesmac, J.D. Cement, and Northeast Steel in relation to Rockland. Section 34-28-16 of the Rhode Island Mechanics' Lien Law clearly provides that the failure to promptly contest a claim results in the loss of a mortgagee's priority status. The parties, however, dispute the extent of Rockland's subordination. The claimants argue that although Rockland timely answered their petitions, Rockland was subordinated as to all lienors pursuant to § 34-28-16 upon its failure to timely answer the earlier-filed petitions of Northern Site, Sheridan, Roofing Concepts, and Rustic. Rockland counters that it only lost its priority over Northern Site, Sheridan, Roofing Concepts, and Rustic. Rockland further asserts that because it timely answered the complaints of Jesmac, J.D. Cement, and Northeast Steel, these three claimants never gained priority over Rockland's mortgages.
"`When the language of a statute expresses a clear and sensible meaning, this [C]ourt will not look beyond it.'" Such v.State, 950 A.2d 1150, 1158-1159 (R.I. 2008) (quoting FirstRepublic Corp. of America v. Norberg,116 R.I. 414, 418, 358 A.2d 38, 41 (1976)). However, "[w]henever the language used in any section [of the Rhode Island Mechanics' Lien Law] is susceptible of more than one reasonable interpretation, [the Court] shall adopt the reasonable *Page 6 
interpretation which in [the Court's] judgment will best carry out the evident purposes of the statute as a whole." Art MetalConst. Co. v. Knight,56 R.I. 228, 235, 185 A. 136, 139-140 (R.I. 1936). The underlying purpose of this statutory scheme is clearly set forth in § 34-28-32.2:
 This chapter is intended to afford a liberal remedy to all who have contributed labor, material, or equipment towards adding to the value of property to which the lien attaches and should be construed accordingly. Section 34-28-32.2.
As duly observed by our Supreme Court, "the law was `designed to prevent unjust enrichment of one person at the expense of another.'"Gem Plumbing Heating Co., Inc., 867 A.2d at 803 (quotingArt Metal Construction Co.,56 R.I. at 246, 185 A. at 145). At the same time, our Supreme Court has cautioned that
 [i]nherent in the application of the mechanic's lien statute is the potential for harsh results. Given the need for temperance in its enforcement and because the statute is in derogation of common law, it must be strictly construed. Frank N. Gustafson Sons, Inc. v. Walek, 599 A.2d 730, 732 (R.I. 1991).
Therefore, in determining the issues before it, this Court must find a "balance between the strict construction of the statute on the one hand and the carrying out of the basic legislative purpose on the other hand." Faraone, 413 A.2d at 92. Of course, "the legislature could never be presumed to have intended to enact laws which are absurd, unjust or unreasonable." Souza v. ErieStrayer Co., 557 A.2d 1226, 1228 (R.I. 1989) (quotingWilkinson v. Harrington,104 R.I. 224, 239, 243 A.2d 745, 753 (1968)).
With this backdrop, the Court first views the plain language of the statute Section 34-28-16 sets forth that:
 (a) [t]he liens, under § 34-28-1, 34-28-2, 34-28-3 or 34-28-7, of all persons, . . . and the title, claim, lease, mortgage, attachment, or other lien or encumbrance of all persons who have any title, claim, lease, mortgage, attachment, or other lien or encumbrance . . . to or in the property which is the subject matter of the complaint, except *Page 7 
the persons who have recorded the lien or encumbrance before the filing of the complaint and who have not been served with or mailed a citation as provided in § 34-28-15 and who have no actual knowledge, on or before the return day, of the pendency of the complaint, shall be subordinated to the claim of the plaintiff, and persons claiming liens pursuant to this chapter, and any other person having any mortgage, attachment, or other lien or encumbrance who have entered an appearance as a party in the cause, unless the person shall, within twenty (20) days after the return day, or within such other time as may be allowed by the superior court pursuant to Rule 60(b) of the Superior Court Rules of Civil Procedure enter an appearance as a party in the cause commenced by the complaint described in §§ 34-28-10 and 34-28-13 and shall file an answer as follows:
 (1) . . .
 (2) In the case of persons who have any title, claim, lease, mortgage, attachment, or other lien or encumbrance (other than under § 34-28-1, 34-28-2, 34-28-3 or 34-28-7), file a claim setting forth the particulars thereof and praying for the relief and priority to which the person shall deem himself or herself entitled.
 (b) . . .
 Section 34-28-16 (emphasis added).
Rockland argues that the phrase "who have entered an appearance as a party in the cause" modifies the earlier phrase, "persons claiming liens pursuant to this chapter." Rockland therefore asserts that it did not lose its priority to Jesmac, J.D. Cement, and Northeast Steel because these three claimants did not enter an appearance in the earlier-filed claims in which Rockland failed to timely answer. However, the cannon of construction reddendosingular singulis reveals that the phrase, "who have entered an appearance as a party in the cause," only modifies theimmediately preceding phrase "or other lien or encumbrance who have entered an appearance as a party in the cause."[2] This construction is further supported by the fact that the *Page 8 
phrase, "who have entered an appearance as a party in the cause," would be superfluous to the first category, "the claim of the plaintiff."[3]
Nevertheless, our General Assembly must have intended some limitation upon the "persons claiming liens pursuant to this chapter" to whom the non-answering party would be subordinated. The Newport County Superior Court dealt with an identical issue inStock Building Supply, Inc. v. Freedom Bay Cottages, LLC, No. NM-2006-0495, slip op. (R.I. Super. 2008). The question before that Court was whether a mortgagee was subordinated to claimants who had perfected liens but in whose respective enforcement actions the mortgagee entered a timely appearance, and such claimants did not enter a timely appearance in two earlier-filed actions.[4]Stock Building Supply, Inc., No. NM-2006-0495, slip op. at 3. In adopting the facts and travel of the receiver's recommendation on priority issues, [5] the Court granted summary judgment in the mortgagee's favor "against those claimants who did not timely file an *Page 9 
appearance in the earlier enforcement actions, in which actions [the mortgagee] filed its motion to intervene.[6] Id. at 2-3.
In the case before this Court, Jesmac, Northeast Steel, and J.D. Cement had neither perfected their liens, nor entered timely appearances in the actions in which Rockland failed to timely enter an appearance. See Receiver's Petition at 16. Moreover, to penalize a mortgagee when it meets the requirements of § 34-28-16 by entering a timely appearance and filing an answer to a particular complaint would not only be unreasonable but would be contrary to the statute. Pursuant to the language of the statute, subordination to "persons claiming liens pursuant to this chapter" occurs only upon a party's failure to, "within twenty (20) days after the return day, . . . enter an appearance as a party in thecause commenced by the complaint described in §§ 34-28-10 and 34-28-13 and shall file an answer. . . ." Section 34-28-16 (emphasis added). It is undisputed that Rockland timely entered an appearance as a party in the causes commenced by the complaints filed by Jesmac, J.D. Cement, and Northeast Steel, and filed answers therein. Answers were due in the respective actions on February 21, 2009; March 5, 2009; and February 12, 2009. Rockland filed timely answers to each action on January 28, 2009, which was well before the deadline. Because Rockland entered an appearance as a party in the causes commenced by Jesmac, J.D. Cement, and Northeast Steel and filed answers within twenty (20) days after the return day, Rockland is not subordinated to Jesmac, J.D. Cement, and Northeast Steel.
 B *Page 10 Priority of Lienors on the Cotton Shed Property
Now that this Court has determined that Rockland has retained its priority over Jesmac, J.D. Cement, and Northeast Steel, and that Rockland has lost its priority to Northern Site, Sheridan, Roofing Concepts, and Rustic, this Court will address the priority of each particular lienor. Section 34-28-25 of the Rhode Island Mechanics' Lien Law provides, in pertinent part, that:
 the priority of persons mailing and filing notices of intention under § 34-28-4 shall date from the date of the filing; the lien of the persons shall be senior to any subsequently recorded title, claim, lease, mortgage, attachment, or other lien or encumbrance (other than under § 34-28-1, 34-28-2, 34-28-3 or 34-28-7), and the lien of such persons shall be junior to any prior recorded title, claim, lease, mortgage, attachment, or other lien or encumbrance (other than under § 34-28-1, 34-28-2, 34-28-3 or 34-28-7). Section 34-28-25.
The lienors on the Cotton Shed property filed their notices of intention in the following order:
Northern Site KM-2008-1190 August 1, 2008 Book 1957, Page 345
Sheridan KM-2008-1248 August 21, 2008 Book 1960, Page 264
Rustic KM-2008-1396 September 5, 2008 Book 1963, Page 175
Roofing Concepts KM-2008-1445 September 19, 2008 Book 1965, Page 141
Northeast Steel KM-2008-1574 October 21, 2008 Book 1970, Page 188
Jesmac KM-2008-1696 November 19, 2008 Book 1974, Page 240
J.D. Cement Works KM-2008-1718 December 3, 2008 Book 1976, Page 177
 *Page 11 
Accordingly, the priority of the parties involved is as follows: (1) Northern Site, (2) Sheridan, (3) Rustic, (4) Roofing Concepts, (5) Rockland (first and third mortgages), (6) Northeast Steel, (7) Jesmac, (8) J.D. Cement.
 C Rockland's Petition to Foreclose
Rockland petitioned the Court for permission to foreclose pursuant to § 34-28-16.1. Under the Rhode Island Mechanics' Lien Law,
 [t]he power of sale contained in a mortgage on any real property subject to a lien created by this chapter shall not be effected by the filing of a notice of lien as provided in § 34-28-4 and § 34-28-7, provided, however, the power of sale shall be suspended by the filing of a complaint to enforce as provided in this section and the power of sale shall only be exercised thereafter in accordance with the provisions of § 34-28-16.1. Section 34-28-10(b).
Section 34-28-16.1 further provides that:
 [a]t any time after the filing of a petition under § 34-28-10, the holder of a mortgage having a priority over liens existing under § 34-28-1, 34-28-2, 34-28-3 or 34-28-7 may petition the court to exercise the power of sale contained in the mortgage and the court shall grant the petition to foreclose, after notice to all interested parties and hearing thereon, upon a showing by the mortgagee that the mortgage is valid, entitled to priority and is in default, except for a default arising from the filing of a petition to enforce pursuant to § 34-28-10. Section 34-28-16.1.
It is unnecessary for this Court to consult principles of statutory construction as our Supreme Court has already had an opportunity to construe the language at issue. See CoventryCredit Union v. F.D. McGinn, Inc. et al.,620 A.2d 1261 (R.I. 1993) (affirming trial justice's grant of mortgagee's petition to foreclose). In Coventry CreditUnion, our Supreme Court expressly delineated the requirements of this section:
 [P]ursuant to § 34-28-16.1 the court "shall grant" the petition to foreclose provided the statutory criteria have been met, those being: that the mortgage have priority over other liens; that the *Page 12 
mortgage be valid; and that the mortgage be in default. Id. at 1261 (emphasis added).
In the case at bar, all interested parties received notice of Rockland's petition to foreclose, and a hearing was held thereon on May 18, 2009. See Section 34-28-16.1. At hearing, Rockland relied on the Affidavit of First Vice President Jonathan Neuner to establish two of the statutory criteria, namely, the validity and default of its first and third mortgages. Specifically, the Affidavit states that:
 Rockland Trust CDC is the holder and current owner of a first position mortgage lien ("First Mortgage") on the premises known as Lot 10 of Assessor's Plat No. 26 which is located at 186 Providence Street, West Warwick, Rhode Island (the "Property"), which First Mortgage, including the legal description of the property, is set forth in Exhibit 1 to the Rockland entities' Answer, Entry of Appearance, and Filing of Claim which has been filed in this action. (Neuner Aff. 1.)
The Affidavit further provides that:
 Rockland Trust is the holder and current owner of a third position mortgage lien ("Third Mortgage") on the Property as evidenced by Exhibit 3 to the Rockland entities' Answer, Entry of Appearance, and Filing of Claim which has been filed in this action. (Neuner Aff. 3.)
This Court has also reviewed the aforementioned exhibits and is satisfied that the first and third mortgages are valid. The exhibits are signed copies that bear the book and page stamps of the West Warwick Registry. Therefore, the first statutory criterion has been met. See Coventry Credit Union, 620 A.2d at 1261.
Rockland has also established that the mortgages are in default.See Coventry Credit Union, 620 A.2d at 1261. The Affidavit avers that:
 [t]he First Mortgage is in the principal sum of $3,500,000 and the mortgagor, SBER Royal Mills Cotton Shed LLC ("SBER"), is in default of said mortgage as a result of its failure to make payments when due. . . . The Third Mortgage is in the principal sum of *Page 13 
$2,385,973 and the mortgagor, SBER, is in default of said mortgage as a result of its failure to make payments when due, pursuant to its guaranty of the obligations of Cotton Shed State LLC ("Cotton Shed State") to Rockland Trust. (Neuner Aff. 4, 6.)
Finally, Rockland is also entitled to "priority over otherliens." Coventry Credit Union, 620 A.2d at 1261. As held above, Rockland retains its priority over Jesmac, J.D. Cement, and Northeast Steel. Accordingly, Rockland's petition to foreclose pursuant to § 34-28-16.1 is granted.
 III Conclusion
After carefully considering the applicable law and the parties' arguments, this Court finds that Rockland has retained its priority over Jesmac, J.D. Cement, and Northeast Steel. As determined above, the parties are in the following positions: (1) Northern Site, (2) Sheridan, (3) Rustic, (4) Roofing Concepts, (5) Rockland (first and third mortgages), (6) Northeast Steel, (7) Jesmac, (8) J.D. Cement.
This Court further finds that Rockland has valid first and third mortgages, that both mortgages are in default, and that Rockland is entitled to "priority over other liens." Id.; seealso section 34-28-16.1. Accordingly, this Court "shall grant" Rockland's petition to foreclose pursuant to § 34-28-16.1.
[1] The Rockland entities also held a second mortgage, which is not at issue because the loan was never advanced.
[2] This aid to construction is discussed in Sutherland Stat.Const. § 47:26 (6th Ed.):
 The doctrine provides that the limited or restrictive clause contained in the statute is generally construed to refer to and limit and restrict an immediately preceding clause or the last antecedent. . . . It is frequently applied when the opening words of a section are general and the succeeding parts are specific.
[3] This interpretation is consistent with the goal of the statute to require contesting parties to respond to the Court and to allow for subordination when the parties do not contest their priority. It logically extends the use of the word "persons" as the same subject throughout the entire statute. Finally, it follows the High Court's lead in requiring strict compliance with the mandatory procedural requirements in perfecting liens as set forth in PezzucoConstruction, Inc. v. Melrose Associates, L.P.,764 A.2d 174, 177 (R.I. 2001) (strictly construing § 34-28-4(a) and finding fatal plaintiff's failure to mail lis pendens by certified mail). Rather, Gem is now left to pursue its remedies, if any, outside of the mechanics' lien penumbra.
[4] At hearing, there was some discussion as to whether Jesmac, Northeast Steel, and J.D. Cement were attempting to "piggyback." InStock Building Supply, Inc., the Court described this as the process of enforcing a lien by joining in the enforcement proceedings filed by another claimant by entering an appearance without filing an independent enforcement action. Stock BuildingSupply, Inc., No. NM-2006-0495, slip op. at 2. The Court held that the statute does not provide relief by way of any fictional "piggybacking" mechanism because § 34-28-10 provides that a claim "shall be void and wholly lost" unless a claimant files a lis pendens and petition to enforce within the rigid timeframes provided therein. Id.
[5] In the Receiver's Recommendation Regarding Priority Issues Pursuant to the August 21, 2007 Order, the receiver explained that:
 [b]y entering its appearance in an enforcement action within 20 days after the return date, [the mortgagee] would preclude the lien claims asserted in that action from taking priority over its mortgage claims. If [the mortgagee] failed to timely enter its appearance, its claims would be subordinated to the claims of the Claimant filing the enforcement action and to those Claimants who had perfected their liens and had timely entered an appearance in such action, subject however, to such Claimants establishing the validity and amounts of their claims on the "merits". Receiver's Petition at 16 (emphasis added).
[6] The receiver recommended that the mortgagee entered its appearance at the time it filed a motion to intervene.