**MENARD & CO. MASONRY BUILDING CONTRACTORS**

v.

**MARSHALL BUILDING SYSTEMS, INC. et al.**

No. 86–24–Appeal.

Supreme Court of Rhode Island.

March 31, 1988.

Robert S. Bruzzi, Providence, for plaintiff.

Robert J. Ameen, Pawtucket, for defendants.

## OPINION

MURRAY, Justice.

This is an appeal by the plaintiff, Menard & Co. Masonry Building Contractors (Menard), from a judgment of the trial court. That court granted a motion for a directed verdict by the defendant, Marshall Building Systems, Inc. (Marshall). Thereafter, the trial justice granted Marshall's subsequent conditional motion for a new trial, following upon a jury verdict for Menard. We hold that the trial justice misapplied the proper standard in directing a verdict for Marshall. We further hold that the trial justice misconceived material evidence on a relevant issue of fact in improperly granting the defendant's conditional motion for a new trial. Thus we reverse.

The facts, as they relate to the instant appeal, are set forth below. Con-Sul, Inc. (Con-Sul), a foreign corporation, acted as general contractor in the erection of a building in Warwick, Rhode Island.[1] It subcontracted most of the work on the project to Marshall, which, in turn, entered into a subcontract with Menard to perform certain required masonry work. The subcontract between Marshall and Menard contained a provision which required that change orders be in writing. Thomas Copithorne (Copithorne) represented Marshall in its negotiations with Menard and executed the subcontract for Marshall.

During its course of performance on the project, Menard was called to a meeting at the site of the construction project on January 14, 1978 by Copithorne, who served as Marshall's project manager. Con-Sul was represented by its project manager, James Pickett (Pickett). Marshall was represented by Copithorne and its job supervisor, Charles Stone (Stone). Menard was represented by its project manager, Romeo Cillino (Cillino). During the meeting Pickett insisted that Menard perform overtime work to complete the construction of a wall needed to support some equipment which was to be delivered to the site the following Monday. Cillino stated that overtime was unnecessary for the timely completion of the wall. He further advised that overtime was not part of the subcontract between Menard and Marshall and that his workers

---

1. This action was originally tried in the District Court. Menard appealed from an unfavorable judgment, preferring to have the relevant factual issues determined by a jury. By the time of trial Con-Sul was no longer in business. Its local counsel was excused from the case on the day of trial.

must be paid at overtime rates. Although Cillino testified that Pickett of Con-Sul authorized the overtime work, we find it significant that Copithorne, the party with whom Menard had entered into the subcontract, stated "Don't worry about it, you'll be paid for it." Cillino testified that he understood Copithorne to mean that Marshall would pay Menard and Menard accordingly submitted its invoices for the overtime work it performed to Marshall, the party with whom it contracted. He offered unrebutted testimony with regard to situations where the subcontractor's subcontractor performs work for the general contractor. He stated that it is customary within the construction industry for the subcontractor of a subcontractor to be paid by the party with whom it contracted, not by the general contractor. Menard was never paid for the overtime work and brought suit to recover its loss.

During the trial de novo Marshall moved for a directed verdict at the close of Menard's case, which was denied. At the close of its own case Marshall again moved for a directed verdict. The trial justice reserved decision and allowed the case to go to the jury. The jury returned a verdict for Menard. Thereafter, the trial justice granted Marshall's motion for a directed verdict and its later conditional motion for a new trial. In granting the motion for a new trial the trial justice stated that he had a "recollection that the jury was informed in some fashion that Con-Sul was now out of business." He opined that the jury was thereby prejudiced against Marshall.

I

This court has often articulated the standard for review where the trial justice has granted a motion for a directed verdict. Like the trial justice, we are required to examine all the evidence in the light most favorable to the nonmovant, giving no consideration to the weight of the evidence or the credibility of the witnesses, and to draw from that evidence only those reasonable inferences which support the nonmovant's position. The motion should be denied if our examination reveals evidence upon which reasonable minds could differ.

In such a situation the jury should be left to determine the facts of the case. *D'Arezzo v. Bowden,* 512 A.2d 843 (R.I.1986). "However, no recovery can be predicated on positive evidence that contains inherent improbabilities or contradictions that alone or in connection with other circumstances in evidence destroy the declarant's credibility." *Id.* at 846–47. Applying the aforesaid standard to the matter on appeal, we conclude that the trial justice erred in directing a verdict for Marshall.

A

■ The trial justice predicated his decision to direct a verdict for Marshall upon his conclusion that "there is no evidence in this case from which the jury can conclude that, being the project manager, [Copithorne] had authority to say 'Don't worry about it, Marshall will pay you.'" We note that the trial justice specifically found the testimony of Cillino to be credible. Thus he necessarily found that Cillino's testimony was not to be disregarded as containing inherent improbabilities or contradictions. *D'Arezzo, supra.* Indeed, in considering the motion, the trial justice should have culled from the evidence only those reasonable inferences which supported Menard's position.

Our own independent examination of the unrebutted evidence offered by Cillino reveals no inherent improbabilities or contradictions that destroy his credibility. Thus we must examine whether Menard has offered evidence upon which reasonable minds can differ, sufficient, if believed, to sustain a finding that Copithorne had authority to bind Marshall to a contract with Menard and, further, that such an implied contract, founded upon agency principles, came into existence.

B

■ Applying the standard of review appropriate where the trial justice has granted a motion for a directed verdict, we find that Menard has offered evidence sufficient to show that Copithorne had the ap-

parent authority and did in fact bind Marshall to a contract with plaintiff.

Marshall has cited an old case, not binding upon this court, for the proposition that with regard to construction contracts, "[p]ersons who rely upon the authority of an agent to modify by parol a written contract entered into by his principal, do so at the risk of being bound by the contract as it was made." *Ferro Concrete Const. Co. v. United States for Use and Benefit of Luchini*, 112 F.2d 488, 491 (1st Cir. 1940) (citing *Dudley v. Perkins*, 235 N.Y. 448, 139 N.E. 570 (1923)). In *Ferro* the agent, a superintendent of construction who neither negotiated nor signed the contract was found to be without authority to modify said contract. Marshall asserts that its agent, Copithorne, was without authority to modify its contract with Menard by impliedly agreeing to compensate Menard for overtime, a term not contained in the contract. Thus, it argues, it is not bound to pay for such overtime.

■ An agent's apparent authority to contract on behalf of his principal arises from the principal's manifestation of such authority to the party with whom the agent contracts. 1 Restatement (Second) *Agency* § 8 (1958). Such manifestation by the principal to the third person need not be in the form of a direct communication to the third person. The information received by the third person may come from other indicia of authority given by the principal to the agent, for example, the authority to enter into the subcontract that bound Menard to perform masonry work for Marshall. *See* 1 Restatement (Second) *Agency* § 27, comment a at 103–04. That Copithorne had authority to negotiate and execute the subcontract is undisputed by Marshall. Nor has Marshall shown that it communicated a subsequent limitation on Copithorne's authority to Marshall. He attended the meeting at which Menard was directed to perform overtime as Marshall's authorized representative. Thus, we conclude that Menard offered evidence upon which reasonable persons could differ, sufficient to defeat a motion for a directed verdict.

■ One further element is required for a contract modification predicated upon apparent authority to become operative. The third person with whom the agent contracts must believe that the agent has the authority to bind its principal to the contract. 1 Restatement (Second) *Agency* § 8, comment a at 30–31. As we have seen, Cillino testified that he understood that Copithorne represented Marshall at the meeting wherein overtime was ordered. He also testified that he expected to be paid by Marshall. This testimony patently gives rise to the inference that Cillino believed that Copithorne had the authority to bind his principal Marshall with respect to the payment of overtime. In considering a motion for a directed verdict the trial justice was required to draw from the evidence only those reasonable inferences which support Menard's position. In failing to do so, the trial justice committed reversible error. In sum, we hold that Copithorne possessed and exercised the apparent authority to modify Marshall's contract with Menard by impliedly agreeing to pay for the overtime ordered by Con-Sul.

C

■ Marshall argues that it was prejudiced by the refusal of the trial justice to instruct the jury that in order to find for Menard, it must find that the parties waived their rights under the contract. We hold that the trial justice correctly refused to so instruct the jury. It is our opinion that the facts admit of no other construction than that such provision was waived. *Newport Grain Store v. Bergeron*, 115 Vt. 283, 288, 57 A.2d 123, 127 (1948) (by its refusal to charge jury, court impliedly held that under the evidence of the case there was no jury question; while, ordinarily an issue may present a question for the jury, where evidence of case is all one way on issue, it would be error to submit question to jury).

■ Marshall correctly points out that parties to a contract may modify written terms by a subsequent oral agreement, even when the contract calls for modifications to be in writing. However, such par-

ties must be found to have waived their contractual rights with regard to the procedure for modification. *MBT Construction Corp. v. Kelhen Corp.*, 432 A.2d 670, 674–75 (R.I.1981); *Ostroff v. Stephen Girard, Inc. of R.I.*, 79 R.I. 158, 160–61, 85 A.2d 174, 175–76 (1951). As previously noted, Menard was directed to perform overtime labor, a term not included in its contract with Marshall. Copithorne, the party with whom it contracted, stated "Don't worry about it. You'll be paid for it." By explicitly assuring plaintiff that it would be paid for work not contemplated by the contract Marshall waived its contractual rights with regard to the procedure for modification. *Northway Decking & Sheet Metal Corp. v. Inland-Ryerson Construction Products Co.*, 426 F.Supp. 417, 431 (D.R.I.1977); *Fanning & Doorley Construction Co. v. Geigy Chemical Corp.*, 305 F.Supp. 650, 671 (D.R.I.1969); *MBT Construction Corp. v. Kelhen Corp.*, 432 A.2d 670 (R.I.1981). Because we find that the uncontested testimony regarding Marshall's assurances that Menard would be paid admit of no other construction than waiver by Marshall of its right to insist upon literal compliance with the contract, we hold that Marshall was not entitled to an instruction on the question of waiver.

## II

After a verdict for Menard was returned by the jury and the trial justice granted Marshall's motion for a directed verdict, Marshall conditionally moved for and was granted a new trial.

■ In passing upon a motion for a new trial, a trial justice acts as a super-juror and exercises his more experienced judgment in an independent review of all the material evidence, passing upon the weight thereof and assessing the credibility of each witness. Thereafter, the trial justice must determine whether the evidence and such inferences that flow therefrom are in such equilibrium that reasonable persons could arrive at differing results in deciding the case. If so, the motion for a new trial must be denied. Conversely, if the trial justice determines that the jury's verdict is

against the fair preponderance of the evidence, a new trial must be ordered. *Kwarciak v. Star Market*, 506 A.2d 545 (R.I.1986) (citing *Kelly v. C.H. Sprague & Sons Co.*, 455 A.2d 1302 (R.I.1983); *Fonseca v. Balzano*, 454 A.2d 700 (R.I.1983); *Connors v. Gasbarro*, 448 A.2d 756, 759 (R.I.1982)); *Barbato v. Epstein*, 97 R.I. 191, 193–94, 196 A.2d 836, 837 (1964).

■ On appeal a trial justice's ruling on a motion for new trial is "afforded great weight and will not be overturned unless he or she has overlooked or misconceived material evidence, or is otherwise clearly wrong." *Gibbs Oil Co. v. Potter*, 471 A.2d 207, 209 (R.I.1984) (quoting *Labrecque v. Branton Yachts Corp.*, 457 A.2d 617, 621 (R.I.1983) and citing *Barbato v. Epstein*, 97 R.I. at 193, 196 A.2d at 837). In granting the motion the trial justice committed reversible error by misconceiving material evidence on a relevant issue, that of authority. The trial justice reviewed testimony by Marshall's president, Claude I. Gaudette. Gaudette testified that all "extra work" orders were reviewed by him. Thereafter either he or Copithorne would sign them. From this testimony the trial justice erroneously concluded that there was no evidence Copithorne had the authority to change the written contract and permit overtime work.

We might agree with the trial justice that Copithorne was without actual authority to modify the contract between Menard and Marshall. 1 Restatement (Second) *Agency* § 7. Here, however, the question of Copithorne's actual authority was not at issue. Menard has convincingly shown that Copithorne possessed the apparent authority to modify Marshall's contract with Menard and has further shown that such modification occurred. Part I B, *supra.* In predicating his decision to grant a new trial upon the agent's actual authority, the trial justice misconceived relevant evidence on a material matter, thus mandating reversal.

■ Marshall cites additional grounds for affirmance of the judgment granting the conditional motion for a new trial. The trial justice stated that he had a recollec-

tion that the jury was informed in some fashion that Con-Sul was no longer in business. The trial court is invested with wide discretion with regard to the arguments of counsel. The reviewing court will interfere only when that discretion was clearly abused, to the manifest injury of some party. *See Amato v. Sawicki,* 159 Conn. 490, 271 A.2d 80 (1970) (no abuse of discretion in court's refusal to permit prejudicial argument). Evidently Marshall did not attach much significance to the statement because it failed to request a curative instruction. Counsel for both parties dispute whether such statement was in fact made within the jury's hearing. Menard urges that the statement was made at a hearing at which the jury was not present. Quite naturally, Marshall prefers to rely upon the memory of the trial justice. In any event it is clear that neither party adverted to Con-Sul's absence from the point at which Menard began its case-in-chief. Irrespective of whether the jury heard the remark, the fact that Con-Sul was not present at trial was palpably obvious to the jury. In such circumstances, the impact of such statement, even assuming *arguendo* that it was made, was de minimis. Thus, the decision by the trial justice to rely upon it in granting a new trial was clearly wrong and constituted an abuse of his discretion, given its devastating impact upon plaintiff.

We have considered the defendant's other objections and find them to be without merit.

For the reasons set forth above, the appeal is sustained. The judgment appealed from is reversed. The case is remanded, and the Superior Court is directed to reinstate the jury verdict and enter judgment accordingly.