July 27, 1993
UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

No. 92-2281

COMMERCIAL ASSOCIATES, ET AL.,

Plaintiffs, Appellees,

v.

TILCON GAMMINO, INC.,

Defendant, Appellant.

ERRATA SHEET

The opinion of the Court issued on July 22, 1993, is corrected as
follows:

On page 16, paragraph 3, line 2: substitute "or" for "and."

UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

No. 92-2281

COMMERCIAL ASSOCIATES, ET AL.,

Plaintiffs, Appellees,

v.

TILCON GAMMINO, INC.,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

[Hon. Ernest C. Torres, U.S. District Judge]

Before

Boudin, Circuit Judge,

Campbell, Senior Circuit Judge,

and Stahl, Circuit Judge.

John R. Fornaciari with whom Louis V. Jackvony, Jr., Jackvony &

Jackvony, Robert M. Disch and Ross & Hardies were on brief for

appellant.
William R. Landry with whom Michael DiBiase, Karen A. Pelczarski

and Blish & Cavanagh were on brief for appellee, Lechmere, Inc.

July 22, 1993

BOUDIN, Circuit Judge. This action arises out of

efforts to develop a shopping complex known as Bald Hill

Plaza in Warwick, Rhode Island. The plan was the brainchild

of real estate developer Anthony DelVicario, who was a

general partner in a Massachusetts limited partnership called

Commercial Associates ("Commercial"). Tilcon Gammino, Inc.

("Tilcon"), a construction company, learned about the project

and expressed interest to DelVicario in obtaining a contract

to do certain construction work in connection with the

project, primarily site clearing and grading. DelVicario,

with Tilcon's assistance, approached Lechmere, Inc.

("Lechmere"), a Minnesota corporation that operates a chain

of retail stores, and persuaded Lechmere to join the project

as one of the shopping center's "anchor stores."

Lechmere purchased the real estate on which its store

was to be located, and Commercial acquired the remainder of

the property needed for the development. Lechmere and

Commercial entered into a written agreement--called the CORE

agreement-- which provided inter alia that Commercial would

be responsible for the site-clearing work and the

construction of the "footprint" underlying the entire

shopping complex, including the "pad" upon which Lechmere's

store would be built. In consideration, Lechmere agreed to

pay Commercial $1.3 million. Commercial then retained Tilcon

to serve as the general contractor for the site-clearing

-2-

work. Commercial and Tilcon entered into a written contract

dated February 8, 1985, which generally described the scope

of the work to be performed by Tilcon and contained an

estimated total cost of "about $2,800,000." Tilcon started

the site-clearing work around that same time. DelVicario was

the supervisor of the project and directed Tilcon's

activities at the work site on a daily basis. Lechmere had

wanted the pad completed by March 15, 1985, so its store

could open that September in time for the holiday shopping

season. At least in part to meet that timetable, DelVicario

insisted that Tilcon accelerate its work schedule, requiring

Tilcon's staff to work overtime and necessitating extra

equipment and supplies. And, according to Tilcon, DelVicario

insisted that Tilcon perform substantial work at the shopping

center site that went beyond the description of the job

contained in the February 8 contract; Tilcon refers to these

additional tasks as "extras."

Work was completed on schedule, but a dispute soon arose

as to Tilcon's compensation. Tilcon claimed that it was

entitled to additional compensation for the "extras" it

performed at DelVicario's direction. Commercial disagreed--

it believed that Tilcon had agreed to a "guaranteed maximum

price" and had been paid in full--and refused to pay the

final three bills submitted by Tilcon. Tilcon filed a

mechanic's lien on the property under Rhode Island law, and

-3-

on February 7, 1986, brought an action against Commercial and

Lechmere in Rhode Island Superior Court to enforce that lien.

Pursuant to the Rhode Island statute, Commercial posted a

$1.2 million bond to release the lien, and the action proceed

in rem against the bond.1

Following a seven-day bench trial the superior court

found in favor of Tilcon. In a 28-page opinion, the court

found that Tilcon was not bound by the estimated price

contained in the original February 8 contract. The court

found that Tilcon was bound by a maximum price of $3,095,000

contained in a May 8 letter to Commercial, but that a number

of tasks were excluded from this price. Finally, the court

found that Tilcon was entitled to compensation on a "cost-

plus" basis for numerous "extras" performed at the site,

pursuant to the oral assurances of DelVicario.

Under Rhode Island law Tilcon could recover in the lien

enforcement proceeding only for work performed within the

120-day period prior to notice of the lien (the so-called

"lien period"). The court expressly found that Tilcon was

entitled to compensation for work performed prior to the lien

1The mechanic's lien statute provides that respondents
can secure the release of a lien by depositing with the
registry of the court "cash equal to the total amount of the
accounts and demands of all persons claiming liens" or a
surety bond in that amount in lieu of cash. R.I. Gen. Laws
34-28-17. In this case, Commercial deposited a $1.2 million
bond with the registry and, apparently without any objection
from Tilcon as to the amount, the lien was discharged.

-4-

period, but held that it had no power to include these

amounts in its judgment. The court left it to Tilcon to

"pursue this claim in another appropriate proceeding."

The Rhode Island court entered judgment against

Commercial and Lechmere for $1,329,207.03, which represented

the court's painstaking calculation of the compensation due

Tilcon for work at the Bald Hill site during the 120-day lien

period. Tilcon, however, was able to collect only $1.2

million, the amount of the bond that had been posted to

release the lien, leaving a $129,207 deficiency between the

judgment and Tilcon's recovery. The superior court's

decision was affirmed in all respects by the Rhode Island

Supreme Court. Tilcon Gammino, Inc. v. Commercial Assocs.,

570 A.2d 1102 (R.I. 1990).

During the pendency of the mechanic's lien proceeding,

Lechmere and Commercial filed this separate action against

Tilcon in Rhode Island Superior Court seeking damages of

their own arising out of the Bald Hill project. Tilcon

removed the action to federal district court based on

diversity of citizenship. It also filed a counterclaim

against Lechmere and Commercial seeking payment for work that

was not recoverable in the lien action--the deficiency

between the judgment and the bond, and compensation for work

done prior to the lien period--on various theories including

breach of contract, unjust enrichment and fraud.

-5-

After the final decision in the lien case, Tilcon moved

for summary judgment on its counterclaim in this action.

Tilcon argued that the Rhode Island Superior Court had found

as a matter of fact that DelVicario bound Lechmere and

Commercial to a series of oral contracts with Tilcon, and

that Tilcon was owed specific amounts for work performed

under those contracts. Tilcon claimed that Commercial and

Lechmere were collaterally estopped from relitigating these

issues, and that Tilcon was therefore entitled to judgment as

a matter of law for the $129,207 discrepancy between the

superior court's judgment and the $1.2 million bond,2 as

well as approximately $600,000 for work at the Bald Hill site

prior to the lien period.

The district court agreed that Commercial and Lechmere

are bound by the Rhode Island court's factual findings but

only those that were necessary to its judgment. Thus, the

court held that the Rhode Island decision conclusively

established that Tilcon was owed an additional $129,207 for

work performed during the lien period. But the district

court concluded that the Rhode Island decision did not

resolve the issue of who was liable for the deficiency, nor

2Tilcon claims that it is entitled to recover in this
case the entire $1,329,207 amount of the Rhode Island
judgment. But it is undisputed that Tilcon recovered $1.2
million by executing on the bond, and Tilcon does not explain
why it is entitled to more than the $129,207 discrepancy for
the lien period.

-6-

did it establish Tilcon's entitlement to compensation for

work prior to the lien period. The case proceeded to trial.

The original claims of Lechmere and Commercial having been

dismissed, the case was now limited to Commercial's and

Lechmere's liability, if any, for work done by Tilcon prior

to the lien period. The dispute was further narrowed by

stipulations. Pursuant to its prior ruling, the district

court instructed the jury that certain facts, primarily,

Tilcon's entitlement to $129,207 for work done during the

120-day period, had been established in prior litigation and

should not be reconsidered. The court therefore precluded

the parties from introducing any evidence regarding work done

during the lien period. It was determined that liability for

the $129,207 deficiency would be imposed upon whichever of

the defendants was held liable at trial for the pre-lien

work.

At trial, Tilcon introduced evidence seeking to show

that Commercial and Lechmere were liable for additional

payments for work done outside the lien period. At the close

of Tilcon's case the court granted judgment as a matter of

law for Lechmere with respect to all of Tilcon's claims,

leaving only the claims against Commercial; the reasons for

the court's ruling are more conveniently discussed later in

this opinion. The jury then returned a verdict in favor of

Tilcon against Commercial for $307,500. The district court

-7-

added to this amount the $129,207 deficiency between the

judgment in the mechanic's lien action and the bond, made a

number of other adjustments to reflect the stipulations among

the parties, and then entered judgment in favor of Tilcon

against Commercial for the resulting amount of $268,903, plus

prejudgment interest on a certain portion of the debt.

Tilcon now appeals. It argues that the Rhode Island

court's factual findings, if given proper preclusive effect,

required that judgment for the $129,207 deficiency be entered

against Lechmere as well as against Commercial. Commercial

has not made any appearance in this appeal; if the limited

partnership is a defunct or insolvent entity, that might

explain why it is important to Tilcon to obtain a judgment

against Lechmere. Tilcon also argues that collateral

estoppel made Lechmere and Commercial both liable for some

$600,000 in work done prior to the lien period and that it

was error to submit this issue to the jury, which found only

$307,500 due from Commercial. Finally, preclusion aside,

Tilcon argues that the court erred by granting judgment for

Lechmere as a matter of law on each of Tilcon's claims.

We start by considering the collateral estoppel issue

before turning to Tilcon's individual claims against Lechmere

and Commercial. "Federal courts are bound by state law on

the preclusive effect of state judgments." Carillo v. Brown,

807 F.2d 1094, 1101 (1st Cir. 1986); see also 28 U.S.C.

-8-

1738; Gonsalves v. Alpine Country Club, 727 F.2d 27, 29 (1st

Cir. 1984). Thus, the district court was obliged to give the

Rhode Island Superior Court's decision the same preclusive

effect that the Rhode Island courts themselves would give

that decision.

In order for the doctrine of collateral estoppel to

apply under Rhode Island law, "several requirements must be

satisfied: there must be an identity of issues; the prior

proceeding must have resulted in a final judgment on the

merits; and the party against whom collateral estoppel is

sought must be the same as or in privity with the party in

the prior proceeding." State v. Chase, 588 A.2d 120, 122

(R.I. 1991). Like a set of Chinese boxes, the identity-of-

issues element, which is the crucial one in this case, has

three components of its own: "[F]irst, the issue sought to

be precluded must be identical to the issue decided in the

prior proceeding; second, the issue must actually have been

litigated; and third, the issue must necessarily have been

decided." Id. at 123.

In addition, Rhode Island courts, consistent with the

prevailing approach, "allow themselves a good deal of

latitude in applying the rule [of collateral estoppel],

observing the spirit of it rather than the letter." Hill v.

Bain, 15 R.I. 75, 23 A. 44 (1885); see also Klein v.

Commissioner, 880 F.2d 260, 264 (10th Cir. 1989) ("Trial

-9-

courts are granted broad discretion in the application of

collateral estoppel."). We think this "latitude" was vested

in the district court below, as it was sitting in this

diversity case as a surrogate for a Rhode Island tribunal.

Tilcon's principal argument is that the district court

failed to give proper preclusive effect to the Rhode Island

Superior Court's finding that DelVicario was acting as an

agent of Lechmere and as such bound Lechmere to the oral

contracts with Tilcon. Tilcon's argument is based on a

single paragraph in the superior court's decision in which

the court stated that DelVicario, in making assurances of

payment to Tilcon, was "acting within the scope of [his]

authority for and on behalf of . . . Commercial and

Lechmere," and therefore bound his principals to the contract

modifications. We agree with the district court that the

issue of Lechmere's contractual relationship with Tilcon was

not one that "must necessarily have been decided" in the lien

proceeding, and therefore is not entitled to preclusive

effect under Rhode Island law. Chase, 588 A.2d at 123.

The "necessarily decided" element of collateral estoppel

means in this context that an issue was not only actually

decided but also necessary to the judgment. See Restatement

(Second) of Judgments 27 (determination must be "essential

to the judgment"). The reasons for this condition are that a

collateral issue, although it may be the subject of a

-10-

finding, is less likely to receive close judicial attention

and the parties may well have only limited incentive to

litigate the issue fully since it is not determinative. See

Wright, Miller & Cooper, Federal Practice and Procedure

4421 at 193 (1981 ed.). Under these circumstances, extending

the force of the unnecessary finding into a different case is

deemed too risky and possibly unfair.

Liability under the Rhode Island mechanic's lien statute

is not dependent on contract. The statute creates a right of

action against a parcel of property whenever improvements are

made "by oral or written contract with or at the oral or

written request of" the landowner. R.I. Gen. Laws 34-28-

1(a) (emphasis added).3 Thus, Lechmere's liability in the

superior court suit (or more technically, the liability of

Lechmere's property) flowed from its status as owner and the

fact that Tilcon's work on the property was done at

Lechmere's request. A "request," of course, is a far cry

3Deleting irrelevant language, the Rhode Island
mechanic's lien statute provides as follows:

Whenever any building . . . or other improvement
shall be constructed . . . by oral or written
contract with or at the oral or written request of
the owner thereof, . . . such building . . . or
other improvement, together with the land, is
hereby made liable and shall stand subject to liens
for all the work done by any person in the
construction . . . of such building . . . or other
improvement, and for the material used in the
construction . . . thereof, which have been
furnished by any person.

-11-

from a contract. To be sure, findings regarding the

existence and terms of the contract governing Tilcon's

assignment at the work site were necessary to a determination

of the amount of Tilcon's lien, since under Rhode Island law

the amount of the lien is dependent upon the underlying

contract. See Art Metal Constr. Co. v. Knight, 56 R.I. 228,

185 A. 136 (1936). But whether that contract was with

Commercial alone, or Commercial and Lechmere jointly, was

irrelevant. All that mattered was that Tilcon was acting "at

[Lechmere's] request," a fact that was undisputed.4

But we do not rest entirely upon this parsing of the

lien statute. If a factual issue were vigorously litigated

in a prior proceeding and were the focus of the court's

decision, preclusion might well be appropriate even if in

hindsight it could be shown that the issue was, in some

sense, not strictly essential to the outcome. After all, a

factual determination is not inherently untrustworthy just

because the result could have been achieved by a different,

shorter and more efficient route. In this case, however, the

single sentence in question seems to us to fall within the

principle that "if an inquiry reveals that the matters had

`come under consideration only collaterally or incidentally,'

4The Rhode Island Supreme Court's opinion refers to
Lechmere only twice. It does not say that DelVicario was
Lechmere's agent, nor does it suggest that privity of
contract between Lechmere and Tilcon is relevant to the
outcome.

-12-

preclusion is denied." Federal Practice and Procedure,

supra, 4421 at 194 (quoting Norton v. Larney, 266 U.S. 511,

517 (1925)).

The Rhode Island Superior Court states that DelVicario

was an agent of Lechmere only at one point in its 28-page

decision, and there only in passing, somewhat cryptically and

without any explanation or analysis. A few pages earlier in

the decision, the court states that DelVicario was "acting as

Commercial's agent and representative at the job site," with

no mention of Lechmere. We do not think it is at all clear

that, in the later, single sentence relied on by Tilcon, the

superior court meant to determine that DelVicario was

Lechmere's agent for purposes of creating a contract between

Lechmere and Tilcon.5 We conclude that this "finding" was

collateral and not preclusive; and we rest this conclusion on

the joint force of three considerations: the lack of any

legal need for a finding of such an agency, the lack of

clarity in the supposed finding, and the earlier, explicit

statement that DelVicario was Commercial's agent.

5The later sentence relied upon by Tilcon occurs in the
context of a discussion rejecting Commercial's claim that
"extras" authorized by DelVicario did not enlarge the
liability of Commercial under the written contract; and it is

at least possible that the court meant no more than that
DelVicario spoke for Commercial and that Lechmere, having
contracted with Commercial, was stuck with limited
responsibility for DelVicario's extras that flows from the
mechanic's lien statute.

-13-

Tilcon also argues that the district court should have

given preclusive effect to the Rhode Island superior court's

findings as to the amount owed Tilcon for its work at the

Bald Hill site prior to the start of the lien period.

Although the Rhode Island court did make some findings as to

amounts owed for certain items of pre-lien work, it declined

to do so for other items, stating that it had no power under

the mechanics lien statute to award compensation for the pre-

lien work. Accordingly, the pre-lien findings are on their

face matters that it was not necessary to decide.

Tilcon seeks to rescue these findings by arguing that

they were necessary in order to determine the validity of the

"guaranteed maximum price" defense put forward by Commercial

and Lechmere. Under Rhode Island law, to the extent that a

contractor has promised to do a job for a fixed sum, the

amount that can be collected for that job under the

mechanic's lien statute is limited to the contract maximum

less whatever payments have already been made. See Art Metal

Constr. Co., 185 A. at 146-47. Therefore, Commercial and

Lechmere argued in the lien case that the guaranteed maximum

price agreed to by Tilcon represents an outer limit of

recovery. To reject the defense, says Tilcon, the extras

done prior to the lien period had to be individually

analyzed.

-14-

This argument is imaginative but not persuasive. The

Rhode Island trial judge ultimately rejected the guaranteed

maximum price defense on multiple grounds: he found that the

original contract price relied upon was a preliminary

estimate and that the later binding price was higher, covered

only work done after May 8, and covered only work specified

in the contract and not numerous extras. The guaranteed

maximum price defense then faded from view in his decision,

and there was no careful summing up of the pre-lien extras in

order to reject the defense. Indeed, as already noted, the

judge declined to quantify a number of pre-lien items on the

ground that they were not compensable.

In the end, it is not clear why the Rhode Island

Superior Court made specific findings as to some of the pre-

lien items. He did not explain why he did so and the issue

was not discussed on appeal. But there is no indication that

the trial judge in the lien case followed the line of

reasoning urged by Tilcon. It is up to Tilcon to establish

the requisites for collateral estoppel, see Federal Practice

and Procedure, supra, 4420 at 185, and in our view this

effort fails as to the pre-lien period findings. This is

enough for our purposes although we note that Lechmere's

liability would not be affected since--as we shall see--

Lechmere is not liable in any event.

-15-

The district court's ruling on the collateral estoppel

issues did not prevent Tilcon from attempting to prove at

trial in this case that Lechmere in fact entered into a

contract with Tilcon, or that Lechmere is liable to Tilcon on

one of the other theories set forth in Tilcon's counterclaim.

Tilcon did attempt to prove such liability, but at the close

of Tilcon's case the district court entered judgment as a

matter of law in favor of Lechmere on each of Tilcon's

claims. Tilcon says this was error as to three claims--

breach of contract, quantum meruit, and unjust enrichment6--

but we agree with the district court's entry of judgment.

At trial, Tilcon attempted to prove that DelVicario was

acting as an agent of Lechmere when he made oral assurances

to Tilcon that it would be paid for the "extra" work

performed at the site, and therefore bound Lechmere to a

series of oral agreements. The question posed, on review of

a directed verdict, is whether a reasonable jury could only

have reached the same conclusion as the trial court, and our

review is plenary. See NewHarbor Partners, Inc. v. F.D.

Rich. Co., 961 F.2d 294, 298 (1st Cir. 1992). We are

convinced that there was insufficient evidence to permit a

6Tilcon's remaining claims were fraud, constructive
trust, and violation of the Racketeer Influenced and Corrupt
Organizations Act ("RICO"), 18 U.S.C. 1961 et seq. The

RICO count was dismissed prior to trial, and judgment as a
matter of law was entered on the fraud and constructive trust
counts. Tilcon does not pursue these claims on appeal.

-16-

reasonable jury to find that DelVicario was an agent of

Lechmere capable of binding Lechmere to a contract.

Under Rhode Island law, agency may be based upon either

actual authority and apparent authority. See Menard & Co.

Masonry Building Contractors v. Marshall Bldg. Sys., Inc.,

539 A.2d 523, 527 (R.I. 1988) (adopting formulation of

Restatement (Second) of Agency). The first theory requires

evidence of an actual understanding between the principal and

agent that the latter is to act on behalf of the former.

There was no suggestion at trial of any actual agreement

between Lechmere and DelVicario under which the latter would

act as Lechmere's agent with respect to the Bald Hill

project. Accordingly, Tilcon presses only a theory of

apparent authority.

Apparent authority "arises from the principal's

manifestation of such authority to the party with whom the

agent contracts." Menard & Co. Masonry Building Contractors,

539 A.2d at 526. In other words, the focus is on the conduct

of the principal, not the putative agent. The principal must

act in a way that leads a third party to believe that the

agent is authorized to act on the principal's behalf, here,

authorized to enter into contractual arrangements for

Lechmere with Tilcon. And, finally, the third party's belief

in the agent's authority to act on behalf of the principal

-17-

must be a reasonable one. See Rodrigues v. Miriam Hosp., 623

A.2d 456 (R.I. 1993); Restatement (Second) of Agency 267.

Here, the only evidence of any representations and other

conduct by Lechmere regarding DelVicario's authority was the

testimony of Thomas Gammino, Tilcon's chief engineer and vice

president, that Lechmere's people instructed Tilcon to follow

DelVicario's instructions on the job site. But that

statement would not permit a reasonable person to conclude

that DelVicario's promises regarding payment for work were

the promises of Lechmere. Indeed, the statement is perfectly

consistent with the opposite interpretation: that Lechmere

was leaving the site-clearing work to Commercial and

Commercial's man DelVicario, and was keeping its own hands

out of it. This is also true of the fact that DelVicario may

have been motivated in directing Tilcon's actions by a

timetable and other requirements imposed by Lechmere on

Commercial. Tilcon points to no other evidence of any

actions by Lechmere affirming DelVicario's authority, and

this gap in proof is fatal to Tilcon's contract claim against

Lechmere.

In addition, even if Tilcon in fact believed that

DelVicario represented Lechmere,7 no reasonable jury could

7In fact, the trial testimony was quite equivocal as to
whether Tilcon actually believed that DelVicario represented
Lechmere. Only two witnesses testified for Tilcon: its vice
president, Thomas Gammino; and its foreman at the Bald Hill
site, Robert Pion. Both witnesses described DelVicario as a

-18-

have found that belief justifiable. At the outset of the

project Tilcon joined forces with DelVicario to make a sales

pitch to Lechmere; there is no suggestion that DelVicario had

any prior affiliation with Lechmere. Gammino testified that

it was Tilcon's practice to enter into written contracts with

all parties with whom Tilcon dealt, yet Tilcon never entered

into or sought to enter into a written contract with

Lechmere. Before beginning work Tilcon performed a credit

check on Commercial, but made no such inquiries regarding

Lechmere.

Nor did Lechmere take a more prominent role once work

began. The May 8 letter containing a binding maximum price

was submitted by Tilcon to Commercial, not to Lechmere.

Tilcon submitted all its bills to Commercial for payment.

Lechmere was never involved in the billing process, never

asked to examine any of Tilcon's invoices, and never made any

direct payments to Tilcon. Even when the final three bills

went unpaid, Tilcon did not look to Lechmere for

compensation. Lechmere was simply one of the anchor stores

in a larger project developed by Commercial. It was not

until litigation, and the need for a deeper pocket, that

Lechmere was brought into the fray.

representative of Commercial. But Gammino did testify at one
point (after considerable hedging) that he "believed . . .
that Tony Delvicario was in charge for both people," i.e.

Commercial and Lechmere, and so we will assume that Tilcon
introduced enough evidence, if barely, to show actual belief.

-19-

We also agree with the district court's entry of

judgment for Lechmere on the unjust enrichment claim. To

recover on a theory of unjust enrichment under Rhode Island

law, the plaintiff must show that it conferred a benefit on

the defendant "in such circumstances that it would be

inequitable for the defendant to retain the benefit without

payment to the plaintiff for the value thereof." Anthony

Corrado, Inc. v. Menard & Co. Bldg. Contractors, 589 A.2d

1201, 1202 (R.I. 1991). This claim under state law was

equitable and was tried to the district judge. We share the

district court's view that Tilcon offered "no evidence that

would suggest that the enrichment [to Lechmere] if there was

any was unjust," and therefore need not concern ourselves

with the standard of appellate review on this issue.8

As the district court noted, virtually all of the work

done by Tilcon at the Bald Hill site benefitted all of the

participants in the project--including Commercial and the

other stores in the shopping complex--and Tilcon offered no

principled way of isolating the economic benefit to Lechmere

alone. The district court also found that Lechmere's CORE

8Courts have disagreed whether unjust enrichment
presents a question of fact that is reviewed under a clearly
erroneous standard, or a question of law reviewed de novo.

Compare Commodity Futures Trading Comm'n v. Heritage Capital

Advisory Servs., Ltd., 823 F.2d 171, 172 (7th Cir. 1987),

with In re Estate of Zent, 459 N.W.2d 795, 798 (N.D. 1990).

Needless to say, such an all-or-nothing choice is not
compelled.

-20-

agreement with Commercial included a payment to Commercial to

arrange for the site-clearing work. Tilcon offered no

evidence that the benefit to Lechmere resulting from Tilcon's

work at the site exceeded that payment. Finally, the court

traced the relationship between Tilcon and Lechmere

throughout the project and concluded, based on the many of

the same factors recited above, that Tilcon had no reasonable

expectation of compensation from Lechmere for work done at

the site.

Tilcon suggests that the court's collateral estoppel

ruling precluded the introduction of any evidence of work

done during the lien period and deprived Tilcon of the

opportunity to show that work done during that period

specifically benefitted Lechmere. But there is no indication

that the work done during the lien period was uniquely

beneficial to Lechmere. We also do not agree with Tilcon

that the district court erroneously believed that proof of

fraud was necessary in order to recover on an unjust

enrichment theory. Rather, the court merely observed,

consistent with Rhode Island case law, that the existence of

fraud or other wrongdoing is a factor in determining whether

the retention of a benefit would be inequitable. See R&B

Elec. Co., 471 A.2d at 1354.

Turning finally to the quantum meruit claim, this is a

quasi-contract claim which, as the district court noted, is a

-21-

close cousin to the equitable remedy of unjust enrichment.

Historically, the claim allowed a party to collect for the

value of services or supplies furnished to another, based on

an implied (at law) promise to pay, even though all of the

requisites of a formal contract might not be present. See

Farnsworth, Contracts, 2.20 at 103 (2d ed. 1990). The

district court made clear that, even if this claim were

directed against Lechmere, the court would direct a verdict

on it for essentially the same reasons given by the court in

ruling on the unjust enrichment claim.9

In its brief in this court, Tilcon chooses instead to

assimilate its quantum meruit claim to its contract claim,

stressing as to both claims the same facts concerning

DelVicario's actions in directing the work to meet Lechmere's

deadlines. The chameleon character of quasi-contract claims

is such that Tilcon can fairly stress this affinity with

contract. But this in turn means that Tilcon must have had a

reasonable basis for looking to Lechmere for payment, and for

reasons already given we do not think that there was any such

relationship between Lechmere and Tilcon, either real or

reasonably imagined by Tilcon. See generally Farnsworth,

9The district court believed with considerable basis
that in Tilcon's complaint the quantum meruit claim, as well

as the contract claim, had been directed solely against
Commercial; but in each case the district court ruled in the
alternative that the claim lacked merit so we do not discuss
the pleading issue further.

-22-

supra, at 107 ("Nor can a party that has made a contract with

another generally disregard the contract and claim

restitution from a third person for performance rendered

under the contract, even if the third person has benefitted

from that performance.").

In sum, we think that the district court ably sorted its

way through a complex commercial dispute, further complicated

by the prior determinations in the mechanic's lien case. It

may well be that Tilcon has not recovered all that it is due,

possibly because of default by the partnership with which it

contracted and partly because of its failure to insist on an

adequate bond in the lien proceeding. But the decision to do

the work without a contract with or guarantee from Lechmere

was Tilcon's own decision. There was no error in the

district court's rulings.

Affirmed.

-23-