DECISION
The Court, sitting without a jury, heard this matter for non-payment of rent. The plaintiff, J.R.P. Associates (plaintiff), brings this action for rents owed on a commercial lease entered into between J.R.P. Associates and the defendant, Bess Eaton Donut Flour Company, Inc. (defendant). Plaintiff brings this action pursuant to G.L. 1956 § 34-18.1-1, et seq.
Facts/Travel
The stipulated facts (a copy of which are attached hereto) and the evidence reveal the following. The plaintiff and the defendant entered into a lease for the premises located at 220 Westminster Street, Providence, Rhode Island. The lease commenced on January 1, 1987 and was scheduled to terminate on December 31, 1991. Under the terms of the lease, the defendant was to pay $20,000 per year or $1,666.00 per month.
Prior to the completion of this lease, Louis A. Gencarelli, Sr., the defendant's president and CEO, in a telephone conversation with Joseph Paolino, the plaintiff's general partner, discussed reducing the rent paid by the defendant to $10,000 per year or $833.33 per month. Mr. Gencarelli indicated that during that conversation Mr. Paolino agreed to the proposed reduction of rent. This conversation was codified in a letter dated July 22, 1991.
The defendant then began to make rent payments of $833.33 per month beginning on January 1, 1992 until the defendant left the premises on December 31, 1993. During the two years of reduced payments, additional correspondence was sent from the defendant requesting a continuation of the $833.33 per month rent payments and eventually asking for a year rent free.
Beginning on November 30, 1993, the plaintiff began demanding additional rent under the original terms of the lease. On December 8, 1993, the plaintiff demanded $20,353.76 in outstanding rents from the defendant. Plaintiff then commenced this suit on January 15, 1994 to recover rents due pursuant to the lease. Summary judgment was entered, Vogel, J., in the defendant's favor on January 26, 1995. The Rhode Island Supreme Court, finding that a genuine question of fact existed as to whether or not the lease between the parties was modified, reversed the judgment appealed from and remanded the matter.
Modification of a Lease
A commercial lease negotiated by landlord and tenant is a contract, and its validity and construction are governed by substantive rules of contract law. Hart v. Vermont Inv. Ltd.Partnership, 667 A.2d 578 (D.C. App. 1995). Parties to a contract generally may modify the contract's written terms by a subsequent oral agreement. MBT Constr. Corp. v. Kelhen Corp., 432 A.2d 670, 674 (R.I. 1981) (citing Industrial Nat'l Bank v. Peloso,121 R.I. 305, 397 A.2d 1312, 1314 (1979)). A contract modification may be written, oral, or implied from the actions of the parties.Fondedile. S.A. v. C.E. Maguire. Inc., 610 A.2d 87, 92 (R.I. 1992) (citing Menard Co. Masonry Bldg. Contractors v. MarshallBldg. Sys., 539 A.2d 523, 526 (R.I. 1988)). The party alleging the new contract bears the burden of proving the existence of the modification. Fondedile, 610 A.2d at 92. Specifically, the party alleging the modification must demonstrate that the parties have both a subjective and objective intent to be bound by the contract's new terms. Id. (citing Smith v. Boyd, 553 A.2d 131, 133 (R.I. 1989)). When a modification is made in contravention of an express written provision of an underlying contract, "the party claiming the oral modification must show that the parties waived their contractual rights with respect to the express condition in the contract." Fondedile, 610 A.2d at 92 (citingMenard, 539 A.2d at 526-27). In the contexts of a leasehold, a landlord who accepts lesser rent from a holdover tenant is bound for the payments accepted even though the landlord could have insisted upon full payment for any succeeding month. TechnicalEquipment Corp. v. Montauk Garage Corp., 63 N.Y.2d 311 (1946).
The December 6, 1986 lease originally entered into by the parties set forth the terms of payment by the defendant. Specifically, Paragraph 4.1 states that,
 "Tenant shall pay to the Landlord for the Premises during the initial term hereof the following annual base rent: (1) during the first through fifth Lease Years, inclusive, the sum of Twenty Thousand Dollars ($20,000), payable except as set forth in Paragraph 4.2 hereof, in equal consecutive monthly installments of One Thousand Six Hundred and Sixty-Six Dollars ($1,666.00) each . . . ."
The lease terms also control circumstances such as this where the defendant remains in the premises beyond the lease period. Paragraph 14 states, in pertinent part that,
 "Should the Tenant continue to occupy the premises after the expiration of the term hereof, or of any renewal of parties to the contrary, be deemed a tenant from month-to-month upon all the terms and conditions of this Lease which are not inconsistent with such tenancy."
After the lease terminated on January 1, 1991, the defendant remained as a holdover tenant. The payment and acceptance of rents converted the leasehold to a month-to-month periodic tenancy while the parties remained subject to the terms set forth in the original lease. Therefore, absent a modification of the original lease, the defendants are responsible to pay rents as set forth under Paragraph 4.1.
The defendant argues that the lease originally entered into by the parties on December 8, 1986 was modified to allow for the $833.33 per month rent payments. Specifically, the defendant argues that this lease was orally modified by a telephone conversation between Mr. Gencarelli and Mr. Paolino.
The words and actions of the parties demonstrate that the lease agreement was both orally and implicitly modified. During the trial, the Court found Mr. Gencarelli's testimony that the contract was modified to be compelling. Initially, the lease was orally modified as a result of the conversation between Mr. Gencarelli and Mr. Paolino. After this conversation, the defendant sent correspondence to the plaintiff requesting that plaintiff further review their proposal for reduced rent. The plaintiff failed to respond. Thereafter, the defendant began to make monthly rent payments to the defendant for $833.33.
The lease was also impliedly modified as a result of the plaintiff's continuous acceptance of $833.33 per month for two years. The defendant tendered, and the plaintiff accepted, these payments for a period of two years. During this time, plaintiff never made any indication that the $833.33 payments were either insufficient or in any way a breach of the parties lease agreement.
The contract modification is demonstrated, further, by both the subjective and objective intent of the parties. The defendant was clearly under the impression that the reduced payments were sufficient. The plaintiff, an experienced realtor, accepted this reduced rent at a time when commercial real estate in Providence was slow. Therefore, the plaintiff benefited by accepting half the rent rather than not having any tenant at that locale. Courts have recognized that acceptance of reduced rent during economically depressed circumstances is consideration for modification of a commercial lease. Paxton Realty Corp. v.Peaker, 9 N.E.2d 96 (Ind. 1937). Additionally, the parties demonstrated objective intent to be bound by the lower payment term. The payment of the $833.33 for two years without complaint from the plaintiff indicates that both parties acquiesced to the lower payment term.
The plaintiff argues that Paragraph 21 of the lease prevents the plaintiff from waiving their rights under the original lease. Paragraph 21 states, in pertinent part, that
 "No payment by Tenant or receipt by Landlord of a lesser amount than the rents, charges and other sums hereby reserved shall be deemed to be other than on account of the earliest charges and other sums then unpaid, and only then to rent unpaid, nor shall any endorsement or statement on any check or any letter accompanying any check or payment by Tenant be deemed an accord and satisfaction, or to vary the provisions for application herein set forth, and Landlord may accept such check or payment without prejudice to Landlord's right to recover the balance of such rents, charges and other sums due or Landlord may pursue any other remedy in this Lease provided or by law permitted . . . ."
Though this contract modification was made in direct contravention of Paragraph 4.1 of the lease requiring $1,666.00 rent per month, the plaintiff waived its right to that payment set out in the original lease.
The Maryland Court of Appeals faced a similar situation inPumphrey v. Pelton, 245 A.2d 301 (Md. 1968). In that case, the franchiser of an ice cream chain sought an injunction against the franchisee to prohibit the franchisee from selling non ice cream products in its store. The franchiser argued that the contract between the parties was modified because the franchiser knowingly allowed and acquiesced to the selling of those products over a substantial period of time. The plaintiff argued that a nonwaiver provision in the contract allowed the plaintiff to seek an injunction even though they had never objected to the franchisee's activities. The Court held that the franchise agreement was modified despite a nonwaiver clause when the franchiser continually allowed the franchisee to sell goods not permitted under the agreement. Pumphrey v. Pelton, 245 A.2d. at 305-06. Similarly, in this case, the continuous acceptance of $833.33 per month for two years constitutes a continuous waiver by the plaintiff of its rights under the original lease such that the lease has been modified to require only $833.33 per month payments. Furthermore, the modification of the lease waives any rights plaintiff may have had under Paragraph 21.
After review of all the evidence, the Court finds that the parties intended to modify the original lease between the parties. That modification was made both orally between the parties and impliedly from the plaintiffs continuous acceptance of reduced rent for two years. By continuously accepting the reduced rent, the plaintiff has waived its rights under the nonwaiver provision. Accordingly, plaintiff's petition for rents owed on the December 6, 1986 lease between the parties is denied.
Counsel shall prepare the appropriate order for entry.
STATE OF RHODE ISLAND SUPERIOR COURT PROVIDENCE, SC :
J.R.P. ASSOCIATES, a Rhode Island : Partnership : :
VS. : C.A. NO. PC94-0210 :
BESS EATON DONUT FLOUR CO., INC. :
 STIPULATION OF FACTS AND ADMISSIBILITY OF DOCUMENTS
 1. On or about December 6, 1986, Plaintiff, J.R.P. Associates, entered into a Lease with Defendant, Bess Eaton Donut Flour Company, Inc., for premises located at 220 Westminster Street, Providence, Rhode Island (the "Lease"). A copy of the Lease is attached as Exhibit A, and the parties stipulate to its admission.
 2. Defendant remained in possession of the premises through December 31, 1993.
 3. In a letter dated July 22, 1991, and addressed to Joseph Paolino, the General Partner of Plaintiff, Defendant proposed that its rent be reduced to one-half the $20,000 annual rent. A copy of this letter is attached as Exhibit B, and the parties stipulate to its admission.
 4. From January 1, 1992 up to and through December 31, 1993, the Defendant paid to Plaintiff for the premises the sum of $833.33 per month, or $10,000 per year.
 5. In a letter dated September 29, 1992, and addressed to Joseph Paolino, the General Partner of Plaintiff, Defendant offered to renew the Lease for one year "at the current rent of $833.33 per month." A copy of this letter is attached as Exhibit C and the parties stipulate to its admission.
 6. In a letter dated November 17, 1993, and addressed to Joseph Paolino, the General Partner of Plaintiff, Defendant proposed that it would occupy the premises for the period January 1, 1994 through December 31, 1994, rent free. A copy of this letter is attached as Exhibit D and the parties stipulate to its admission.
 7. Plaintiff received and negotiated Defendant's payments of $833.33 for each month during the period January 1, 1992 through December 31, 1993.
 8. On or about November 30, 1993, Plaintiff's attorney wrote to Defendant and made demand for rents. A copy of this letter is attached as Exhibit E, and the parties stipulate to its admission.
 9. On or about December 8, 1993, Plaintiff's attorney wrote to Dante J. Giammarco, attorney for Bess Eaton Donut Flour Company, Inc., making demand for payment in the sum of $20,353.76. A copy of this letter is attached as Exhibit F, and the parties stipulate to its admission.
 10. On or about January 15, 1994, Plaintiff filed suit in the Rhode Island Superior Court to recover rents due pursuant to the terms of the Lease.
 J.R.P. ASSOCIATES BESS EATON DONUT FLOUR CO., INC.
 By its Attorney, By its Attorneys,
 ROBERT E. BOLLENGIER LAW WINOGRAD, SHINE ZACKS, P.C. OFFICES
 By ______________________ By _____________________ Robert E. Bollengier, Esq. Allen P. Rubine, Esq. State Bar No. 1979 State Bar No. 1430 3214 Post Road, Box 7617 Melissa M. Horne, Esq. Warwick, RI 02887 State Bar No. 5291 Telephone: (401) 739-6070 123 Dyer Street Facsimile: (401) 732-5130 Providence, RI 02903 Dated: Telephone: (401) 273-8300 Facsimile: (401) 272-5728 Dated: June 3, 1997